[No. G026359. Fourth Dist., Div. Three. Feb. 4, 2002.]

COUNTY OF ORANGE, Plaintiff and Respondent, v.
SCOTT A. SMITH, Defendant and Appellant.

**COUNSEL**

Scott A. Smith, in pro. per., for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Mary Roth and Mary Tilton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**O'LEARY, J.**—Scott A. Smith filed this appeal after Commissioner Richard G. Vogl ordered him to pay $300 per month child support, plus $42,381.74 in arrears.[1] He maintains he was entitled to have the ruling reviewed de novo by a superior court judge and the commissioner made several mistakes. Finding none of his contentions have merit, we affirm.

I

In 1984, Smith agreed to sign a stipulation stating: (1) one-year-old Bridget was his daughter; (2) he would pay $300 per month in child support; and (3) payments would be made through the Riverside County Probation Department. The stipulation did not indicate whether Smith was represented by counsel. Smith signed the stipulation, as did a deputy district attorney, a family support officer and the court.

For the next year, Smith made all the scheduled payments. In 1985, Bridget's mother told Smith she was going to get married. They dispute what happened next. Smith claims that Bridget's mother, Denise Theodoropolous (Denise) told him she would contact the district attorney to stop enforcement of the child support order, if he stopped visiting her. He chose to stop all contact and child support. Denise maintains she merely told Smith it would cause problems in her new marriage if he continued to visit her, but he could see Bridget. She denies ever telling Smith that he did not have to visit Bridget or that he did not need to pay child support.

---

[1] Scott appealed from the court's statement of decision. However, we take judicial notice of the superior court file, which contains a final order signed by the court and filed on October 4, 1999. We treat this appeal as one made from the final order. (See *Ten Eyck v. Industrial Forklifts Co.* (1989) 216 Cal.App.3d 540, 542, fn. 1 [265 Cal.Rptr. 29].)

Thirteen years later, Denise contacted the district attorney's office and asked them to enforce the child support order. Denise knew Smith had recently become a lawyer and wanted him to "pay attention to Bridget and pay some money so she [could] go to college."

In September 1998, Smith received a bill in the mail from the district attorney's office stating he owed $600 for August and September. He claims he gave $1,000 cash to cover those months plus October. Smith maintains he next received a statement from the district attorney showing he owed $300 for October and $38,000 in arrearages.

The district attorney registered the 1984 child support stipulation/order and submitted a document showing how the arrears were calculated, which show no payments were made after January 1991. It is undisputed Denise has never received financial assistance from the county.

Three months later, Smith filed an order to show cause (OSC) seeking modification of the child support order and arrearages. In his income and expense declaration, he asserted he was self-employed with a gross income of $1,000 per month. He claimed he could not afford to pay any child support or arrearages.

After the court continued the hearing in January 1999, Smith filed a "Notice of Motion Re: Calif. Fam. Code Sec. 4250 & 4251." Citing Family Code section 4250, subdivision (a)(4),[2] he noted he was entitled to "an expedited process in the courts that is cost-effective and accessible to families." He cited section 4251, subdivision (b), which provides that child support cases are to be heard by commissioners "unless an objection is made by the local child support agency or any other party." He requested the presiding judge hear the matter.

The district attorney opposed the motion. The district attorney noted the law requires child support cases to be heard by a commissioner, even after an objection is made. (§ 4251, subds. (a) & (c).) The district attorney explained Smith could make a second objection after the commissioner issued a recommended order, which entitled him to a hearing de novo before a superior court judge. (§ 4251, subd. (c).)

In February, Judge Myron Brown denied Smith's motion and ordered Commissioner Salvador Sarmiento to hear the matter. The case was continued and trailed several times over the next several months. In June 1999,

---

[2]All further statutory references are to the Family Code.

the district attorney filed a responsive declaration, stating Smith owed $41,296.27 and had not provided the court with any facts or authority supporting his claim the arrears should be waived.

On July 1, 1999, Smith's OSC was taken off calendar by the court. The following day, he filed a new OSC, which was different from the one previously filed in several respects. For example, in his income and expense declaration, Smith reduced his gross income from $1,000 to $900 per month. In addition, he made a new factual claim that he was not represented by counsel when he agreed to sign the child support stipulation. He also requested more visitation with his daughter. The new OSC was assigned to Commissioner Richard Vogl. The district attorney filed a responsive declaration, noting the arrears had increased to a total of $42,392.09.

At the hearing, after considering testimony from both parties, the court took the matter under submission. It issued a statement of decision, finding, inter alia, the child support order would remain unchanged and Smith owed $42,381.72 in arrears. The court noted that Smith's license to practice law "may be revoked for noncompliance with [his] child support obligations." It stated that as long as Smith pays $500 per month on the arrears and remains current on the child support obligations, the court would permit him to retain his license.

Smith filed a "Notice of Objection" regarding the statement of decision, pursuant to section 4251, subdivision (c). The district attorney filed a response, stating Smith's objection was untimely. The district attorney argued Smith was required to file an objection to Commissioner Vogl prior to the hearing in order to later challenge any rulings. Commissioner Vogl agreed and "rejected" Smith's objections.

In October, Smith filed a motion for reconsideration, which was continued to January 2000. Believing the continuance amounted to "a denial of the motion by operation of law," Smith filed his notice of appeal in November 1999. In his opening brief, he claims the motion for reconsideration was denied in January 2000 because the trial court recognized this appellate court had sole jurisdiction over the case.

## II

Relying on section 4251, subdivision (c), Smith maintains he timely objected to Commissioner Vogl's findings and recommendations and therefore was entitled to have a hearing de novo before a superior court judge. He misunderstands the statute.

Family support cases must be referred to a child support commissioner. (§ 4251, subd. (a).) Section 4251, subdivision (b) provides in relevant part, "The commissioner *shall act* as a temporary judge unless an objection is made by the local child support agency or any other party." (Italics added.) Subdivision (c) explains, "If any party objects to the commissioner acting as a temporary judge, the commissioner may hear the matter and make findings of fact and a recommended order. Within 10 court days, a judge shall ratify the recommended order unless either party objects to the recommended order, or where a recommended order is in error. In both cases, the judge shall issue a temporary order and schedule a hearing de novo within 10 court days." In other words, one must object to a commissioner twice (before and after the commissioner rules in the case) to have the matter reviewed by a superior court judge.

In January 1999, Smith filed an objection to having a commissioner act as the temporary judge in his case. At the time, the matter was assigned to Commissioner Salvador Sarmiento. However, Smith overlooks the fact his OSC was taken off calendar in July 1999. This resulted in a dismissal of the OSC. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2001) ¶¶ 5:420 to 5:423, pp. 5-134 to 5-136.) A hearing on a dismissed matter cannot be continued to a later date, and thus Smith correctly filed a *new* OSC. (*Ibid.*) The matter was assigned to Commissioner Vogl. Smith failed to object to having this commissioner hear the case. Without an objection, the commissioner "shall" be regarded as a temporary judge (§ 4251, subd. (b)) and consequently Smith was not entitled to have a superior court judge review the matter de novo.

Smith maintains he was not properly notified of his right to object as required by section 4251, subdivision (b), which provides, "The Judicial Council shall develop a notice which shall be included on all forms and pleadings used to initiate a child support action or proceeding that advises the parties of their right to review by a superior court judge and how to exercise that right. The parties shall also be advised by the court prior to the commencement of the hearing that the matter is being heard by a commissioner who shall act as a temporary judge unless any party objects to the commissioner acting as a temporary judge."

It is true that there is no such notice on the standardized form Smith used to initiate the proceedings, and the commissioner did not advise him of his rights before the hearing on the record. However, it cannot be said this error was prejudicial. The record shows Smith was well aware of his right to object to the commissioner and understood it had to be done before the hearing. After all, in January 1999, he filed an objection before his OSC was heard by Commissioner Sarmiento.

Smith does not assert that he was unaware of the requirement. Rather, he offers an unacceptable excuse stating, "Since Judge Brown had already ruled the case must be heard by a commissioner and there were only two such commissioners, [I] did not wish to waste the court's time by renewing [my] objections." Although Smith is now acting in propria persona, he was represented below by counsel. There is no evidence that his counsel did not understand the law.

## III

■ Smith maintains the court misunderstood his "waiver argument." He asserts the court did not read his trial brief and believed the only issue raised was whether Denise waived her right to collect *child support*, which he concedes cannot be waived. Smith claims the court failed to consider his argument that Denise waived the *arrearages*. We find several fatal flaws with his argument.

First, in the statement of decision, the court made the factual determination that it believed Denise's testimony that she did not expressly agree to waive child support or arrearages.[3] In light of this conclusion, it obviously was not necessary for the court to reach the legal question of whether child support or arrearages can be waived by a parent.

Second, the evidence does not support Smith's claim Denise waived arrearages. His argument is based on the premise he made an agreement with Denise in 1985. However, Smith was not asked to pay arrearages until over 10 years later, in 1998. Thus, the purported 1985 waiver related to child support, not arrearages. Smith concedes "a child's right to support cannot be abridged by his [or her] parents." (See *County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838, 1849 [38 Cal.Rptr.2d 18] ["a minor's right to support and maintenance by its father may not be limited or contracted away by the parents"].)[4] Indeed, any waiver of child support by Denise must be deemed void.

---

[3]The court stated: (1) "[Scott] argues that he acted upon the 'representation' of the mother that if he did not visit he would not have to pay child support. The court does not find this 'representation' by the mother to have ever occurred"; and (2) after graduating law school, Scott "attempted to make contact with the child. . . . There was a discussion between the mother and [Scott] in which she indicated she would waive any claim to arrears if [Scott] would pay for the college costs [of] the child. [Scott] refused, indicating he felt he owed nothing, and wanted to go to court. The offer by the mother was thereafter withdrawn."

[4]Without deciding, we note there is persuasive authority that one cannot waive child support arrears. (See Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 6:739.10, p. 6-288.)

## IV

■ Smith maintains we should reverse the court's order based on the doctrine of laches,[5] which is "available as a defense to payment of child support arrearages." (*In re Marriage of Copeman* (2001) 90 Cal.App.4th 324, 332 [108 Cal.Rptr.2d 801].) ■ " 'In practice, laches is defined as an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party such as to render the granting of relief to the other party inequitable. [Citation.] [To make a finding of laches, the] . . . trial court [must] find[] (1) unreasonable delay; and (2) prejudice . . . .' " (*Id.* at p. 333.)

■ It is undisputed Denise waited 13 years before pursuing child support. During those years, she never asked Smith to pay child support. When asked during the hearing if it "bothered" her when Smith stopped paying child support, she responded, "No." She explained she felt sorry for Smith because she knew he had trouble staying employed. Arguably, the 13-year delay was unreasonable.

However, the record does not support a finding the delay caused Smith undue prejudice. *In re Marriage of Copeman, supra,* 90 Cal.App.4th at page 334, is instructive. There, a father ignored the court's order increasing his child support payments. The children's mother waited nearly 12 years before seeking child support arrearages. However, during those years, the father voluntarily paid for many of his children's "extracurricular" expenses. Although he did not keep many financial records, he was able to document over $12,000 in child-related expenses. (*Ibid.*)

The trial court found the delay unreasonable and caused the father undue prejudice. It reasoned, "[The father] testified that he could not have afforded to pay for all the [extracurricular] expenses in addition to the child support increases. Moreover, [the mother's] delay in asking for the arrearages prevented him from seeking a modification of the support order and from keeping complete records documenting the additional financial support he provided his sons." (*In re Marriage of Copeman, supra,* 90 Cal.App.4th at p. 334; see also *In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353, 1365-1366 [93 Cal.Rptr.2d 653] [prejudice shown by father's financial contributions to his child and failure to keep records of all payments].) Such

---

[5]We acknowledge that on appeal and before the trial court Scott never mentioned the term "laches," but rather discussed in general terms his right to "equitable relief." For example, he argued Denise "should be estopped from seeking arrearages" due to her conduct. We construe this contention as raising the defense of laches. The trial court failed to address the issue. With respect to equitable defenses, the court merely noted that equity did not require it to disregard the support order because there was no evidence Denise concealed the child.

was not the case here. Smith had no contact with his daughter for 13 years. There is no evidence he gave her any money until forced to do so by the district attorney in 1998.

Arguably, Smith's voluntary absence from his daughter's entire childhood defeats his claim of laches. "[A]s a general rule, a party seeking equitable relief must come into court with clean hands. [Citation.]" (*In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 478-479 [94 Cal.Rptr.2d 156] [father who failed to remain in contact with his children for 30 years had unclean hands].) Denise testified she did not lead Smith to believe he could discontinue paying child support. To the contrary, she stated it was always her hope he would "becom[e] responsible" and be a part of Bridget's life and be a "good father." Smith's decision to abandon his relationship with his daughter in exchange for a $300 monthly savings is tragic. Bridget was robbed of her father's love and emotional support, and she is at least entitled to his financial support.

## V

■ Finally, Smith asserts the court should not have enforced the stipulated child support judgment he signed in 1984. He argues, a stipulation to paternity is voidable if a parent, unrepresented by counsel, can establish that he was not advised of his right to trial, was unaware of that right, and "would not have executed the agreement otherwise." (*County of Los Angeles v. Soto* (1984) 35 Cal.3d 483, 486 [198 Cal.Rptr. 779, 674 P.2d 750].) Smith maintains such was the case here. He explains, "[T]he stipulated judgment . . . was not the result of an action being filed by [either] party. Rather, it was a result of [Smith] voluntarily going to Riverside County and setting up a mechanism for paying child support, in order to show the child's mother he could be a good father. . . . [¶] . . . [¶] At no time was [Smith] represented by an attorney. Further, [Smith] was, at that time, never advised by the Family Support Officer of his right to a trial on the issues of paternity or the ability to pay support." He maintains these facts are "undisputed" and gives one record reference which is to the stipulated judgment itself.

Smith's argument fails for several reasons. First, "[A] parent may [not] use a motion to modify child support as a vehicle to reopen the issue of paternity once a final judgment of paternity has been rendered." (*City and County of San Francisco v. Stanley* (1994) 24 Cal.App.4th 1724, 1729 [30 Cal.Rptr.2d 106], fn. omitted.) " 'The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes . . . .' [Citation.] Therefore, '[a] judgment of paternity . . . is res judicata in any subsequent civil enforcement proceeding.' [Citation.]" (*Id.* at p. 1728.) To challenge his paternity or the validity of

the stipulation, Smith was required to bring a motion to set aside the judgment. (*Id.* at pp. 1728-1729.)[6]

We will not construe Smith's OSC as a motion to set aside the judgment. Although he mentioned in the OSC that he was not given "legal advice" before signing the stipulation, he never requested that the judgment be set aside. Consequently, the court and the County of Orange were not notified this would be an issue at the hearing. As aptly stated in the Attorney General's brief, "Had [Smith] claimed he was never advised of his right to an attorney, Orange County could have sought evidence from the Riverside County Superior Court file or from the Riverside County District Attorney, Family Support Division."

In any event, Smith did not come close to making the required evidentiary showing to set aside a judgment. He focuses on the fact the stipulation contains only his signature. He argues it proves he was not given any legal advice or advised of his right to a trial. The two do not equate. Smith may have been represented by counsel, but chose to sign the stipulation himself. Besides, he failed to demonstrate he was unaware of his right to a trial and would not have otherwise signed the stipulation. In short, there is not a shred of evidence tending to show the agreement was not voluntary and intelligent in the constitutional sense. (See *County of Los Angeles v. Castro* (1984) 160 Cal.App.3d 899, 904 [207 Cal.Rptr. 15].) Rather, the evidence suggests he desired to pay child support to show he could be "a good father."

The order is affirmed. The county shall recover its costs on appeal.

Sills, P. J., and Moore, J., concurred.

---

[6]Indeed, all the cases Scott discusses on this topic involve review of a parent's motion to set aside the judgment.