[No. A100718. First Dist., Div. Two. Feb. 26, 2004.]

In re the Marriage of SUSAN R. CROSBY and JACK F. GROOMS.

SUSAN R. CROSBY, Respondent, v.
JACK F. GROOMS, Appellant;
COUNTY OF HUMBOLDT, Respondent.

COUNSEL

Dalton & Bicknell, Donald W. Bicknell and Robin N. McStay for Appellant.

No appearance for Respondent Susan R. Crosby.

Bill Lockyer, Attorney General, James M. Humes, Assistant Attorney General, Frank S. Furtek and Mary Dahlberg, Deputy Attorneys General, for Respondent County of Humboldt.

OPINION

**KLINE, P. J.**—Jack Grooms appeals after the trial court ordered his child support obligation modified. Grooms, who resides in California, contends the trial court erred in using California law to modify an Idaho child support order because federal and state law and the choice of law provision in the parties' marital settlement agreement require that Idaho law be applied in modifying the support order, even though the parties no longer live in Idaho. In the alternative, Grooms contends the court should have deviated from the California child support guidelines and used Oregon law in determining the proper amount of support because that is where the minor children and their mother, Susan Crosby, reside. Because we conclude (1) the relevant statutory scheme and public policy require that California law be used in modifying the Idaho child support order, and (2) the trial court did not abuse its discretion when it failed to use Oregon law to determine Grooms's child support obligation, we shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Crosby and Grooms obtained a divorce decree in Idaho on May 15, 1996. They had been residents of Idaho for more than three years at that time and had six children together. Pursuant to a marital settlement agreement, the parties agreed that Grooms would pay $500 per month in child support for the three minor children in Crosby's custody at that time, beginning May 1, 1996; this amount was lower than the Idaho guideline amount of $584.

Grooms had moved to California and Crosby had moved to Oregon before signing the marital settlement agreement. Nonetheless, the agreement included the following provision regarding its interpretation: "INTERPRETATION: [¶] All matters affecting the interpretation of this Agreement and the rights of the parties hereto shall be governed by the laws of the State of Idaho."

On December 2, 1996, the Humboldt County District Attorney, Family Support Division (now the Humboldt County Department of Child Support Services (Department)) registered the Idaho support order in the California Superior Court.[1]

Crosby continues to reside in Oregon with the remaining minor children and Grooms continues to reside in Humboldt County, California.

On October 24, 2001, the Department filed a motion to modify child support and for a finding that Humboldt County had continuing exclusive jurisdiction, pursuant to Family Code section 4960, subdivision (a)(1). In his response to the motion, Grooms consented to California jurisdiction, but requested that Idaho's child support guidelines be used to determine the amount of his support obligation.

On July 12, 2002, following a hearing on the motion, the court found: "Pursuant to Family Code § 4960(a)(1) continuing exclusion [*sic*] jurisdiction (C.E.J.) is properly in Humboldt County, California, and California law is properly applied." The court established the guideline support amount as $1,545 per month from December 1, 2001 until July 1, 2002, when, following one child's emancipation, the monthly guideline amount would become $1,145 for the two remaining minor children. The formal order after hearing was filed on August 21, 2002.

Grooms filed a notice of appeal on October 18, 2002.

## DISCUSSION

### I. *California Law Controls Grooms's Child Support Obligation*

Grooms contends both federal and state law, as well as the interpretation clause in the parties' marital settlement agreement, require that Idaho law be used to determine his child support obligation.

Because this contention solely involves questions of law, we employ de novo review. (See *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 271 [32 Cal.Rptr.2d 807, 878 P.2d 566].)

---

[1] The Humboldt County District Attorney intervened in this dissolution action for the purpose of enforcing the support award pursuant to Family Code section 17400 (formerly Welfare and Institutions Code section 11475.1). The Attorney General represents Humboldt County as intervener and respondent on appeal for the public interest pursuant to Family Code sections 17406 and 17407.

## A. *The Controlling Statutory Provisions Confirm that California Law Applies*

■ The Uniform Interstate Family Support Act (9 pt. 1B West's U. Laws Ann. (1999) U. Interstate Fam. Support Act, § 101 et seq. (UIFSA)), which has been adopted by all states, governs, inter alia, the procedures for establishing, enforcing and modifying child support orders in cases in which more than one state is involved. The 1996 version of the UIFSA took effect in California on August 4, 1997. (See Fam. Code, § 4900 et seq.)[2] Together with the Federal Full Faith and Credit for Child Support Orders Act (FFCCSOA) (28 U.S.C. § 1738B), the UIFSA ensures that in every case only one state exercises jurisdiction over child support at any given time. (See UIFSA, com. to § 201, pp. 275–277;[3] Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2003) ¶ 18:725, p. 18-190.)

Accordingly, the UIFSA provides that the state that first issued a child support order has "continuing, exclusive jurisdiction" over the order "[a]s long as [the] state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued." (Fam. Code, § 4909, subd. (a)(1); accord, UIFSA, § 205, subd. (a)(1).) In such circumstances, the "law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order." (Fam. Code, § 4953, subd. (a); accord, UIFSA, § 604, subd. (a).) Thus, in the present case, had Grooms, Crosby, or the minor children remained in Idaho, that state would have retained exclusive jurisdiction, and a California court could enforce, but could not modify, the order. (See Fam. Code, § 4952, subd. (c) ["Except as otherwise provided in this article, a tribunal of this state shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction"]; accord, UIFSA, § 603, subd. (c).)

Nevertheless, a court may modify another state's existing child support order in certain limited circumstances. Specifically, if another state's order

---

[2] The UIFSA was initially promulgated by the National Conference of Commissioners on Uniform State Laws in 1992. The UIFSA was amended in 1996 and again in 2001. (See Sampson, J., *Uniform Interstate Family Support Act (2001) with Prefatory Note and Comments (with Still More Unofficial Annotations)* 36 Fam. L.Q. 329, 337.) California enacted the 1996 UIFSA in 1997. (Stats. 1997, ch. 194 § 2.) It has also adopted the 2001 UIFSA, but the 2001 version will not be operative in California until July 1, 2004. (Stats. 2002, ch. 349 § 41.)

[3] The official comments to the UIFSA provide guidance in ascertaining the intent of the act. (See, e.g., *Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 930, fn. 13 [60 Cal.Rptr.2d 841] [it is well established that comments of commissioners regarding uniform state laws "are part of the legislative history and may be considered when the meaning of a statute is uncertain"].)

has been registered in California under Family Code sections 4950–4952 (accord, UIFSA, §§ 601–603), California may modify the order if the following three requirements are met:

"(i) The child, the individual obligee, and the obligor do not reside in the issuing state.

"(ii) A petitioner who is a nonresident of this state seeks modification.

"(iii) The respondent is subject to the personal jurisdiction of the tribunal of this state . . . " (Fam. Code, § 4960, subd. (a)(1); accord, UIFSA, § 611, subd. (a)(1); see also 28 U.S.C. § 1738B (e)(1), (e)(2)(A) and (i) [similar FFCCSOA provisions].) The official comment to the UIFSA section 611 explains that the policies underlying subdivision (a)(1) "contemplate that the issuing state has lost continuing, exclusive jurisdiction and that the obligee may seek modification in the obligor's state of residence . . . ." (UIFSA, com. to § 611, p. 371.)

■ In the present case, this means that once Grooms, Crosby, and the minor children left Idaho and the Idaho child support order was registered in California, Crosby was entitled to seek modification of the order in this state. Grooms does not quarrel with this conclusion. He agrees that California has jurisdiction to modify the Idaho order, but argues that California must use Idaho's child support guidelines in making the modification. A careful reading of the relevant UIFSA provisions, however, demonstrates that the substantive and procedural laws of the forum state, in this case California, must be followed.[4]

First, subdivision (b) of Family Code section 4960 provides: "Modification of a registered child support order is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a tribunal of this state and the order may be enforced and satisfied in the

---

[4] Although no California appellate court previously has been called upon to answer this exact question, courts in other jurisdictions that have addressed whether, in circumstances similar to those of the present case, the issuing or the forum state's law should be applied, have reached the same conclusion: the forum state's law governs. (See *State, CSED v. Bromley* (Alaska 1999) 987 P.2d 183, 188–191 (*Bromley*) [when Alaska tribunal assumes jurisdiction of a child support order for purpose of modification, "it should apply Alaska law to determine the appropriate amount of child support"]; *Groseth v. Groseth* (1999) 257 Neb. 525, 533–536 [600 N.W.2d 159, 166–169] (*Groseth*) [once Nebraska assumes jurisdiction, court applies Nebraska's substantive law to modifiable provisions of other state's support order]; *Cooney and Cooney* (1997) 150 Or.App. 323, 328 [946 P.2d 305, 307] (*Cooney*) [once Oregon court acquires jurisdiction over foreign support order, "it is to apply Oregon law to determine the proper amount of the child support"]; cf. *Wall v. Borosky* (Ala.Civ.App.) 850 So.2d 351, 355–357; *Reichenbacher v. Reichenbacher* (1997) 1999 PASuper 99 [729 A.2d 97, 98–99].)

same manner." (Accord, UIFSA, § 611, subd. (b).) The comment to section 611 explains that subdivision (b) "states that if the forum has modification jurisdiction because the issuing state has lost continuing, exclusive jurisdiction, the proceedings will generally follow local law with regard to modification of child support orders." (UIFSA, com. to § 611, p. 373);[5] see also *Bromley, supra,* 987 P.2d at p. 189; *Cooney, supra,* 946 P.2d at p. 307.)

Further support for our interpretation is found in Family Code section 4917, which provides: "Except as otherwise provided by this chapter, a responding tribunal of this state:

"(a) Shall apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in this state and may exercise all powers and provide all remedies available in those proceedings; and

"(b) Shall determine the duty of support and the amount payable in accordance with the law and support guidelines of this state." (Accord, UIFSA, § 303.) The comment to section 303 explains the policy behind this emphasis on use of local law in modifying child support orders: "Historically states have insisted that forum law be applied to support cases whenever possible. This continues as a key principle of UIFSA. In general, a responding tribunal has the same powers in an action involving interstate parties as it has in an intrastate case. . . . To insure the efficient processing of the huge number of interstate support cases, it is vital that decision-makers apply familiar rules of local law to the maximum degree possible." (UIFSA, com. to § 303, p. 303; see also *Bromley, supra,* 987 P.2d at p. 190; *Groseth, supra,* 600 N.W.2d at p. 167.) [6]

---

[5] A limitation to the forum's state ability to modify a support order is found in subdivision (c) of Family Code section 4960: "A tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state." (Accord, UIFSA, § 611, subd. (c).) This limitation does not affect the question before us regarding modification of Grooms's child support obligation.

[6] In addition, as the Alaska Supreme Court in *Bromley* noted, the report to Congress of the United States Commission on Interstate Child Support further "supports the view that local law applies when a state assumes jurisdiction to modify a child support order. The Commission, which Congress created in 1988 to recommend 'how to improve the interstate establishment and enforcement of child support awards,' favored a system under which the modifying jurisdiction's law would apply in modification proceedings. In its report to Congress, the Commission noted that it had heard testimony advocating a variety of approaches to deciding which state's law to apply in such proceedings: Some witnesses testified that the law most advantageous to the child should govern, others testified that the law where the obligor resides should govern, and still others testified that the law where the child resides should govern. The Commission ultimately recommended 'that the procedural and substantive law of the forum state should govern in establishment and modification proceedings,' citing the 'ease and efficiency of application of local law by decision-makers' as an important consideration. As

Grooms argues that, notwithstanding the general mandate of Family Code section 4917, subdivision (b), a tribunal of this state responding to a request to modify another state's order must "determine the duty of support and the amount payable in accordance with the law and support guidelines of this state," the specific provisions of Family Code section 4953, subdivision (a), should govern. Thus, according to Grooms, the "law of the issuing state"— here Idaho—"governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order." (Fam. Code, § 4953, subd. (a); accord, UIFSA, § 604, subd. (a); 28 U.S.C. § 1738B(h)(2) (FFCCSOA).) Grooms therefore asserts that, here, Family Code section 4953, subdivision (a), is applicable to the request for modification of the original Idaho order.

We are unconvinced by Grooms's narrow interpretation of Family Code section 4953. Instead, we find persuasive the Nebraska Supreme Court's discussion in *Groseth, supra,* 600 N.W. 2d 159, in which it explained: "It is implicit, by the use of the term 'current' in § 42-739(a) [Nebraska's version of UIFSA, § 604], that the substantive law of Massachusetts (the issuing state) applies merely to petitions to *enforce existing* orders of the issuing state and not to subsequent orders resulting from petitions to *modify* child support orders in a responding state. Indeed, 'current payments and other obligations' cease to be 'current' once they are modified. [¶] Moreover, once a responding state assumes continuing, exclusive jurisdiction and modifies an issuing state's support order, the responding state becomes the issuing state. [Citations.]" (*Groseth, supra,* at pp. 166–167.) [7]

 We conclude, based on a commonsense reading of the relevant federal and state statutes, the official comments to the UIFSA, and the case law of other jurisdictions that have considered this question, that when California assumes continuing, exclusive jurisdiction over a child support order for purposes of modification of that order, it must apply California law to determine the amount of child support owed.

---

discussed above, the official UIFSA commentary [to UIFSA section 303] echoes this concern for efficiency." (*Bromley, supra,* 987 P.2d at pp. 190–191, fns. omitted, citing United States Commission on Interstate Child Support, *Supporting Our Children: A Blueprint for Reform* (1992) pp. 91–92.)

[7] The *Groseth* court further noted that the comment to the UIFSA, section 604, underscores that that section's choice-of-law language "was intended for enforcement actions and not for modification proceedings. In particular, it explains: [¶] 'This section identifies situations in which local law is inapplicable. *The basic principle of [the UIFSA] is that* throughout the process the controlling order remains the order of the issuing state, and that *responding states only assist in the enforcement of that order. Absent a loss of continuing, exclusive jurisdiction and a subsequent modification of the order, the order never becomes an "order of the responding state."* ' " (*Groseth, supra,* 600 N.W.2d at p. 167, quoting UIFSA, com. to § 604, pp. 357–358.)

## B. *The Interpretation Clause in the Marital Settlement Agreement Does Not Change This Result*

Grooms contends that even if California law normally would govern modification of a child support order in the present circumstances, the fact that the parties' marital settlement agreement included a clause stating that "[a]ll matters affecting the interpretation of this Agreement and the rights of the parties hereto shall be governed by the laws of the State of Idaho" means that the amount of child support in this case must be decided using Idaho law. We disagree.

■ First, due to the special nature of child support, parents are bound by public policy extrinsic to their own agreements. (E.g., *County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838, 1849 [38 Cal.Rptr.2d 18] ["It has long been the law in this state that a minor's right to support and maintenance by its father may not be limited or contracted away by the parents"]; accord, *County of Orange v. Smith* (2002) 96 Cal.App.4th 955, 962 [117 Cal.Rptr.2d 336] [a child's right to support cannot be abridged by his or her parents].) In the present case, since the interpretation clause requiring application of Idaho law would serve to limit Grooms's child support obligation and undermine the mandate of the UIFSA, it is contrary to public policy and is not enforceable. (See *County of Shasta v. Caruthers*, at p. 1849; *County of Orange v. Smith*, at p. 962.)

■ Second, Idaho also has passed the UIFSA, including its choice-of-law provisions. (See Idaho Code §§ 7-1008, 7-1015, 7-1043, 7-1050; accord, UIFSA, §§ 205, 303, 604, 611.) Consequently, Idaho law requires that the guidelines of the forum tribunal—here California—be used to modify a child support order. (See *ibid.*)

Third, even under general choice-of-law principles, relied on by Grooms, it is appropriate to apply California law. In *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 466 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*), our Supreme Court followed section 187 of the Restatement Second of Conflict of Laws (Restatement) in determining whether a choice-of-law provision should be enforced: "[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties'

choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (*Nedlloyd, supra,* 3 Cal.4th at p. 466, fns. omitted.)

Here, Idaho no longer has a substantial relationship to either party or the transaction (the child support obligation). Neither party has lived in Idaho for many years, and there is no reasonable basis for choosing Idaho law over the law of one of the states in which the parties live. (See *Nedlloyd, supra,* 3 Cal.4th at p. 466 [11 Cal.Rptr.2d 330, 834 P.2d 1148].).) Moreover, even if the "substantial relationship" or "reasonable basis" tests had been met, use of Idaho's child support guidelines would be contrary to a fundamental policy of California law, i.e., that the UIFSA be followed in choosing the forum state and the law applicable to an interstate child support modification. Also, given that Grooms lives in California and, under the UIFSA, California is the proper forum for modifying the child support order (see Fam. Code, §§ 4909, 4917, 4960; accord, UIFSA, §§ 205, 303, 611), California plainly has a " 'materially greater interest' " than Idaho in the determination of the amount of child support. (See *Nedlloyd, supra,* 3 Cal.4th at p. 466.) The court correctly refused to enforce the choice-of-law provision in the marital settlement agreement.

Accordingly, because the interpretation clause in the parties' marital settlement agreement does not change the result required by the relevant statutory scheme, the trial court properly applied California law in modifying the child support order.

## II. *Deviation from California Guideline Amount Due to Lower Cost of Living in Oregon*

Grooms contends the trial court should have deviated from the California child support guidelines by using Oregon's guidelines to determine his child support obligation. Crosby asserts that Grooms has impermissibly raised this issue for the first time on appeal.

■ While Grooms's counsel requested that the court use Idaho or Oregon guidelines to determine the amount of child support, he never asked that the court, in applying the California guidelines, utilize Family Code section 4057, subdivision (b)(5), to deviate from the California guidelines and apply Oregon law.[8] We agree that Grooms failed to explicitly raise this question first in the trial court, and therefore find that the issue is waived. (See *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [257 Cal.Rptr. 397].)

Moreover, even were we to find that counsel's assertion at the hearing, that "it doesn't make sense to use a California guideline which was based on California cost of living to support a family in rural Oregon," or his vague argument "that the Court has discretion and equity and demands that you use either the state the parties agreed to or the state where the children live and not California," was sufficient to raise the issue and preserve it for appeal, we find no abuse of discretion on the part of the trial court. (See *In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128 [70 Cal.Rptr.2d 109].)

Specifically, Grooms offered no evidence regarding the differences in the cost of living between Oregon and California. The record shows that Crosby spends $1,000 on an eight-acre property in rural Oregon while Grooms has a $1,359-per-month mortgage in California. Grooms believes this fact supports his claim that the court should have deviated from the California guideline formula and calculated support pursuant to the Oregon child support guidelines. In light of the extremely limited evidence presented at the hearing related to this issue, Grooms has not shown that the trial court abused its discretion in failing to lower the amount of child support due to the lower cost of living in Oregon. (See *In re Marriage of Chandler, supra,* 60 Cal.App.4th at p. 128; see also Fam. Code, § 4057, subd. (b)(5).)

---

[8] Family Code section 4057, subdivision (b), provides in relevant part: "The presumption of subdivision (a) [that the amount of child support established by the guideline formula is correct] is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case . . . because one or more of the following factors is found to be applicable by a preponderance of the evidence . . . : [¶] . . . [¶] (5) Application of the formula would be unjust or inappropriate due to special circumstances in the particular case. These special circumstances include, but are not limited to, the following [circumstances inapplicable to the present case]."

Counsel did specifically invoke Family Code section 4057, subdivision (b)(5), to argue for a deviation from the guideline amount because this was a case "in which the parents have different time-sharing arrangements for different children." (Fam. Code, § 4057, subd. (b)(5)(A).) No request was made, however, to apply that subdivision due to the lower cost of living in Oregon.

## *DISPOSITION*

The order is affirmed.

Lambden, J., and Ruvolo, J., concurred.