Filed 11/24/15  Certified for Publication 12/21/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| COUNTY OF LOS ANGELES CHILD SUPPORT SERVICES DEPARTMENT,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>BARRY YOUNGBLOOD, et al.,<br><br>    Real Parties in Interest. | No. B266826<br><br>(Super. Ct. No. BL073595)<br><br>(Marshall Rieger, Commissioner) |

ORIGINAL PROCEEDING.  Petition for Writ of Mandate, Marshall Rieger, Commissioner.  Petition granted.

County of Los Angeles Child Support Services Department, Alexandra Bauer, Chief Attorney, Tammy Nakada, Legal Counsel, for Petitioner County of Los Angeles Child Support Services Department.

William S. Cizmadia, Law Office of William S. Cizmadia, for Real Party in Interest Barry Youngblood.

1

This petition presents a narrow issue: When a foreign (Swiss) judgment establishing paternity and child support is registered in California for enforcement purposes under the Uniform Interstate Family Support Act ("UIFSA" or "the Act"), may a California court order genetic testing to challenge registration of that order. We decide the answer is no.

## FACTUAL AND PROCEDURAL BACKGROUND

This petition involves a paternity and support action that was filed in the District Court of Zurich, Switzerland (the "Zurich court") in 2008. The action alleged that petitioner Barry Youngblood ("Youngblood") is the father of Jayden Lee Bischof ("Jayden"), who was born on November 8, 2007. Jayden's mother is Fernanda Angela Bischof ("Bischof"). Both Jayden and his mother live in Switzerland. Youngblood lives in California. Youngblood did not appear in the paternity and support action in Switzerland.

According to Swiss authorities, Youngblood was personally served with the Zurich court's December 11, 2008 initiating court order in Las Vegas, Nevada on November 23, 2009. Youngblood does not deny that he was served with documents in Las Vegas in November 2009, but claims service was defective because the unsigned Swiss order that he received was not a summons and did not identify the court action, the location of the court, how to contact the court, or the name of the issuing judge.

On May 5, 2010, the Zurich court issued a judgment declaring "the defendant [Youngblood] is the father of plaintiff, Jayden Lee Bischof born on November 8, 2007 by Fernanda Angela Bischof," and requiring Youngblood to pay monthly child support. This judgment ordered child support from June 1, 2010 until the child turns 18 years of age or completes initial vocational training. On August 23, 2010, the Zurich court issued a corrected order, directing that child support payments be retroactive to the birth of the child on November 8, 2007. Youngblood was served with the May 2010 judgment and August 2010 corrected order in Los Angeles, California on September 23, 2010.

2

In 2013, the Zurich court referred the matter to California, requesting that its May 2010 judgment and August 2010 order be registered in the California courts for enforcement purposes only. In November 2013, petitioner County of Los Angeles Child Support Services Department ("County") filed the registration statement and other documents with the Los Angeles Superior Court. The action was filed under the UIFSA, which is codified at Family Code section 4900 et seq.

On December 31, 2013, Youngblood filed a request for hearing regarding registration of the support order. The form includes a section stating, "I request that service of the registration of support be vacated (canceled) because:" Below that, Youngblood checked the boxes stating, "The court or tribunal that issued the order did not have personal jurisdiction over me" and "Other (specify)." Next to "Other (specify)," he typed: "Paternity at-issue; not established in foreign order."

On January 21, 2014, Youngblood filed a request to vacate service of registration and memorandum of points and authorities. This memorandum of points and authorities argued two grounds for vacating the registration: First, the County failed to file all of the documents required to register a foreign order pursuant to Family Code section 4951(a)(2). Second, the Zurich court did not have personal jurisdiction over him.

In response to Youngblood's contentions, the Swiss authorities provided the County with a letter stating that "[p]aternity was established in this case based on the testimony of the mother of the child. The court heard her as a witness under the penalty of perjury. . . . [¶] Therefore, paternity was established and the respective order of the District Court of Zurich of May 5, 2010 is fully enforceable in Switzerland." The County also filed multiple photographs of Youngblood, Jayden, and Bischof together, as well as photographs of Youngblood holding and playing with Jayden.

Also in the record are copies of emails between Youngblood and Bischof. In a March 2007 email exchange, Bischof informed Youngblood that she was pregnant. Youngblood responded: "Wow! [¶] Where do I begin, I really don't know what to say. I know that I am not ready to father a child right now but I will do what's right and I will support you and help you as much as I can. I hope you are ok and I think we need to talk

3

about this instead of writing, so when you feel like talking to me I will make time for you.  And don't worry I am not mad at you cause I know it takes two."  On June 30, 2007, Youngblood wrote to Bischof:  "u have been on my mind alot lately and i guess it's because u will be a part of my life forever.  [¶]  i hope that i can b a good father but who knows.  [¶]  i will try to do the best i can for both of you."  About a month later, he wrote again:  "sorry for being so distance [sic] with you but you are having my son and i am really really nervous."

This evidence was not discussed at the hearings held on Youngblood's request to vacate the registration of the support orders.  The trial court opened the first hearing, held on February 18, 2014, by stating, "This is the father's motion, assuming the registration's right, for a hearing on whether or not the tribunal in Switzerland had personal jurisdiction on him."  The parties briefly discussed whether the County had served all the necessary documents.  Then the trial court interjected:

"The Court:   Well, let me ask a dumb question to counsel.  I won't ask his client directly.  Does Mr. Youngblood agree he's the father?

"Mr. Cizmadia:        No, he does not.

"The Court:   Then I think, for now, we probably need to stay all collections.  And to the extent that he'd also like to have, probably, genetic testing -- "

The County objected that the trial court has no authority to determine parentage, as the child was born in Switzerland and the paternity judgment was issued in Switzerland.  If Youngblood wished to challenge paternity, the County argued, then he must do so in Switzerland.  The trial court did not address the argument but instead noted there may be some way for Youngblood to obtain genetic testing without conceding Switzerland's jurisdiction.  It then stayed all collections and continued the matter for 90 days.

At the continued hearing on June 27, 2014, the parties informed the trial court that, to obtain genetic testing, the request must originate from the original jurisdiction of Switzerland under the terms of the Hague Convention.  That would require Youngblood to file a motion in federal court, requesting that the federal court ask Switzerland for a

4

genetic test. The trial court said, "That's fine . . . . [¶] Then we have a road map for counsel."

Youngblood's attorney tried to re-focus the trial court on the threshold personal jurisdiction question by stating, "Well, your Honor, I don't think that we even need to get to the issue of genetic testing because I don't think that the District Court of Zurich had personal jurisdiction over respondent [Youngblood] . . . ."

However, the trial court was unusually focused on genetic testing. It said: "I know it works. I want him to have testing. If he's not the one, don't clutter up my caseload. I don't know that I can do that in this case yet, but I can talk with some people that do more international stuff than I do . . . ."

After some additional discussion over whether Switzerland had jurisdiction over Youngblood, the court ordered genetic testing and continued the case to October 7, 2014 for a status hearing. On July 2, 2014, the court filed an order after hearing, directing "all parties to participate in genetic testing prior to next court date."

On September 11, 2014, the County filed a notice of appeal. Youngblood filed a motion to dismiss, arguing that the family court's genetic testing order was not appealable. After hearing oral argument on the motion to dismiss on August 4, 2015, we issued an order stating our tentative view that the County shall have until September 15, 2015 to file a writ petition challenging the genetic testing order. Upon filing of the petition, the appeal would be dismissed.

On September 16, 2015, the County filed this writ petition. We granted the County's request for an immediate stay of the genetic testing order. We then issued an alternative writ, directing the trial court to vacate its genetic testing order or show cause why this court should not issue a peremptory writ directing it to do so. The trial court did not comply with the alternative writ. We now grant the County's petition.

5

**DISCUSSION**

## A.    *Legal Standard*

Questions of law and issues of statutory interpretation are reviewed de novo.  (*In re Marriage of Schofield* (1998) 62 Cal.App.4th 131, 137.)  In interpreting statutory language, "[w]e begin with the fundamental rule that our primary task is to determine the lawmaker's intent.  (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.)  In determining the legislative intent, we look first to the words of the statutes themselves.  (*Ibid.*)  "If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction."  (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1083.)

If the statutory language is ambiguous, "'the courts may turn to rules or maxims of construction "which serve as aids in the sense that they express familiar insights about conventional language usage."'  [Citation.]"  There are "a number of extrinsic aids, including the statute's legislative history, to assist us in our interpretation [of the statutory language]."  (*Ibid.*, fn. omitted.)  If ambiguity remains after resort to secondary rules of construction and the statute's legislative history, then "we apply 'reason, practicality, and common sense to the language at hand.' [Citation]."  (*Id.* at p. 1084.)


## B.    *The Uniform Interstate Family Support Act*

The UIFSA has been adopted by every state in the nation.  The 1996 version of the UIFSA took effect in California on August 4, 1997 and it is codified at Family Code section 4900 et seq.[1]  It "governs . . . the procedures for establishing, enforcing and modifying child support orders in cases in which more than one state is involved. . . . Together with the Federal Full Faith and Credit for Child Support Orders Act (FFCCSOA) (28 U.S.C. § 1738B), the UIFSA ensures that in every case only one state

---

[1]    Senate Bill 646 adopts the 2008 amendments to the UIFSA.  The bill has been approved by the Legislature and signed by the Governor.  It takes effect on January 1, 2016.

exercises jurisdiction over child support at any given time." (*In re Marriage of Crosby & Grooms* (2004) 116 Cal.App.4th 201, 206.)

"The 'cornerstone' of the UIFSA is the concept of 'continuing, exclusive jurisdiction,' codified in California as section 4909. [Citation.] 'UIFSA was designed to ensure that only one state at a time would have jurisdiction to make and modify a child support order. "[T]he central jurisdictional feature of UIFSA is the concept of continuing, exclusive jurisdiction." (*In re Marriage of Haugh* (2014) 225 Cal.App.4th 963, 969.) Accordingly, the UIFSA provides that the state that first issued a child support order has "continuing, exclusive jurisdiction" over the order "[a]s long as [the] state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued." (Fam. Code, § 4909, subd. (a)(1); UIFSA (1996), § 205, subd. (a)(1).) "'The court of another state may enforce a child support order registered in that state, but may not modify it unless the decree state has lost its continuing, exclusive jurisdiction.'" (*In re Marriage of Haugh*, *supra,* 225 Cal.App.4th at p. 969.)

## C.     *Request to Vacate Registration of the Support Order*

Family Code section 4956 sets forth the sole grounds on which a party may seek to vacate the registration of a support order. These are:

1. The issuing tribunal lacked personal jurisdiction over the contesting party.
2. The order was obtained by fraud.
3. The order has been vacated, suspended, or modified by a later order.
4. The issuing tribunal has stayed the order pending appeal.
5. There is a defense under the law of this state to the remedy sought.
6. Full or partial payment has been made.
7. The statute of limitation under Section 4953 precludes enforcement of some or all of the alleged arrearages.

(Fam. Code, § 4956, subd. (a).)

Genetic testing or lack thereof is not one of the enumerated bases for vacating the registration of a foreign support judgment. Neither is nonparentage. In fact, the UIFSA

specifically provides that "[a] party whose parentage of a child has been previously determined by or pursuant to law may not plead nonparentage as a defense to a proceeding under this chapter." (Fam. Code, § 4929; UIFSA (1996), § 315.) The official comments to the UIFSA explain:[2] "This section mandates that a parentage decree rendered by another tribunal 'pursuant to law' is not subject to collateral attack in a UIFSA proceeding." (Coms. to UIFSA (1996), § 315, p. 49; see also Coms. to UIFSA (1996), § 606, pp. 71-72 ["[A] contest of the fundamental provisions of the registered order is not permitted in the responding state. The nonregistering party must return to the issuing state . . . to prosecute such a contest ([obviously] only as the law of that state . . . permits)"].)

The plain language and effect of Family Code section 4929 are clear: Youngblood may not defend against registration of the support order by claiming that he is not Jayden's father. That parentage determination was made by the Zurich court, pursuant to Swiss law, when it declared "the defendant [Youngblood] is the father of the plaintiff, Jayden Lee Bischof born on November 8, 2007 by Fernanda Angela Bischof." Any challenge to that finding must be brought in the issuing tribunal in Zurich. It may not be raised as a collateral attack in the responding tribunal in California.

Youngblood argues that he is nonetheless entitled to genetic testing because the California proceedings are "separate and distinct" from the Zurich action, raises questions of law and fact that are "separate and distinct" from those raised in the Zurich action, and entitles him to discovery as a matter of right on anything that is relevant to the "subject matter" of the pending action. Alternatively, he argues that even if the California action is not "separate and distinct" from the Zurich action, discovery is reopened upon registration.

Youngblood's arguments miss a crucial point: The California proceeding may be distinct from the Zurich action, but it is an enforcement proceeding only. The issues that

---

[2] "The official comments to the UIFSA provide guidance in ascertaining the intent of the act." (*de Leon v. Jenkins* (2006) 143 Cal.App.4th 118, 124 fn.4 [quoting *In re Marriage of Crosby & Grooms* (2004) 116 Cal.App.4th 201, 206 fn. 3].)

8

may be litigated in an enforcement action under the UIFSA are statutorily limited.  (See, e.g., Fam. Code, §§ 4952, subd. (c) ["Except as otherwise provided in this article, a tribunal of this state shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction"], 4956, subd. (a) [setting forth grounds for vacating registration of a foreign support order].)  Thus, while the family court has authority to order discovery, that discovery must be relevant to an issue that may be raised and litigated in the enforcement proceeding at hand.  Here, genetic testing can be relevant only to the question of parentage, and parentage is not an issue that may be raised and litigated in this enforcement action.

Youngblood next argues that genetic testing is relevant to the question of whether the Zurich court had personal jurisdiction over him — a question that is properly at issue in this enforcement proceeding.  (See Fam. Code, §§ 4952, subd. (c), 4956, subd. (a).)  Under the UIFSA, one way a court may acquire personal jurisdiction over a nonresident is if "[t]he individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse."  (UIFSA (1996), § 201, p. 17; Fam. Code, § 4905, subd. (6).)  According to Youngblood, the results of a genetic test are relevant to determining whether he "engaged in sexual intercourse" in Switzerland and whether Jayden "may have been conceived by that act of intercourse" in Switzerland.

In effect, Youngblood is attempting to shoehorn a prohibited nonparentage defense into his personal jurisdiction argument.  We need not address whether genetic testing is ever permitted as part of a personal jurisdiction defense, because it is clearly not relevant to Youngblood's personal jurisdiction defense in this case.  No one alleges that Youngblood "engaged in sexual intercourse in" Switzerland or that "the child may have been conceived by that act of intercourse" in Switzerland.  In a brief filed with the trial court, the County asserts that Youngblood and Bischof "engaged in a brief one-week relationship in Nevada."  Youngblood himself acknowledges that he and Bischof had a sexual relationship in Las Vegas, Nevada.  A trial court brief filed by Youngblood on September 25, 2015 states:  "[Youngblood] stated that he first met [Bishof] in Las Vegas in 2007 and acknowledged having a brief relationship with her in Las Vegas in 2007. . . .

9

[Youngblood] does not concede that he is the minor child's father; however, even if he is, the act of intercourse that led to the conception of the minor child occurred in Las Vegas."

In light of both parties' concession that conception, if any, took place in Nevada, it is apparent the County does not argue that the Zurich court obtained jurisdiction because Youngblood "engaged in sexual intercourse in [Switzerland] and the child may have been conceived by that act of intercourse." (See UIFSA (1996), § 201, p. 17; Fam. Code, § 4905, subd. (6).) Instead, the County argues the Zurich court had personal jurisdiction over Youngblood because it properly served him with notice of the parentage and support action, and provided him with a chance to be heard. Alternatively, the County argues the Zurich court acquired personal jurisdiction by virtue of Youngblood's relationship with a woman who he knew would return to Switzerland, his promises to support Bishof and Jayden, his travel to Switzerland to meet Jayden, and his failure to provide for Jayden despite his obligation to do so. At no point does the County argue that personal jurisdiction is proper because Jayden may have been conceived in Switzerland.[3] Youngblood's suggestion that genetic testing is necessary for him to prove otherwise is a red herring.

Nor do we agree with Youngblood that denial of genetic testing would somehow violate his due process rights. He argues that he has the burden of demonstrating that the Zurich court lacked jurisdiction even though he was not an active party in that case and does not have meaningful access to evidence. In light of that burden, he argues, denial of discovery "is inherently unconstitutional" and denies him his right to due process. However, our decision today does not implicate Youngblood's right to discovery generally. We hold only that, in the context of this case, genetic testing is not relevant to any matter that is properly before the trial court in this enforcement proceeding under the UIFSA.

---

[3]     We recite the parties' arguments for context only. We do not reach the issue of whether the Zurich court had personal jurisdiction over Youngblood.

Finally, Youngblood argues that Family Code section 4929 does not bar his nonparentage defense because the Zurich court's determination of paternity was not "by or pursuant to law," as the Zurich court lacked personal jurisdiction over him. (See Fam. Code, § 4929 ["A party whose parentage of a child has been previously determined *by or pursuant to law* may not plead nonparentage as a defense to a proceeding under this chapter"] [emphasis added].) While this would be true *if* the Zurich court lacked personal jurisdiction, Youngblood has not yet established that the Zurich court did not have personal jurisdiction and the trial court has not yet ruled on the matter.

**DISPOSITION**

The County's motions for judicial notice are granted.[4] The petition for writ of mandate is granted. The superior court is ordered to vacate its July 2, 2014 genetic testing order.

KIRSCHNER, J.[*]

We concur:

TURNER, P. J.

BAKER, J.

---

[4] Youngblood correctly argues that the court may not judicially notice the truth of the allegations in the pleadings and other documents filed with the superior court. (*North Beverly Park Homeowners Assn v. Bisno* (2007) 147 Cal.App.4th 762, 779.) However, the court may (and does) take judicial notice of the existence of the documents, and the fact that certain arguments were made by the parties therein. (*Ibid.*)

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/21/15

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| COUNTY OF LOS ANGELES CHILD SUPPORT SERVICES DEPARTMENT,<br><br>       Petitioner,<br><br>       v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>       Respondent;<br><br>BARRY YOUNGBLOOD, et al.,<br><br>       Real Parties in Interest. | No. B266826<br><br>(Super. Ct. No. BL073595)<br><br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

       The opinion in the above-entitled matter filed on November 24, 2015, was not certified for publication in the Official Reports.  Good cause appearing, it is ordered that the opinion in the above-entitled matter be published in the official reports.

_____

KIRSCHNER, J. *                         TURNER, P. J.                         BAKER, J.

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.