875 So.2d 705 (2004)
Donald TAYLOR, Jr., Appellant,
v.
Terrie E. BONSALL, f/k/a Terrie E. Taylor, Appellee.
No. 5D02-3046.
District Court of Appeal of Florida, Fifth District.
June 4, 2004.
Steven J. Guardiano, Daytona Beach, and Eric K. Neitzke of Eric K. Neitzke, P.A., Daytona Beach, for Appellant.
*706 Gary E. Massey of Gary E. Massey, P.A., Altamonte Springs, for Appellee.
THOMPSON, J.
Donald Taylor, Jr. ("father") appeals an order granting Terrie Bonsall's ("mother") motion for modification of the parties' final judgment of dissolution by extending his obligation to pay child support past their daughter's eighteenth birthday. The father argues that under a stipulation between himself and the mother, he would be responsible for extended child support only if the court entered such an order prior to the child's reaching age eighteen. No order extending the father's obligation was entered before the child's eighteenth birthday. Therefore, he concludes the mother and daughter must file a separate legal action for support. We agree.

FACTS
The mother and father were married on 29 December 1979, and had two children: Sterling Taylor, born on 4 July 1982, and Devon Taylor, born on 28 September 1983. The final judgment of dissolution, which was rendered on 24 April 1989, approved and incorporated the parties' marital settlement agreement. In the settlement agreement, the mother was given primary residential custody of the two children, and the father was required to pay child support in the amount of $260 per month per child. This amount was approximately $120 per month over the guidelines amount, and the father also agreed to pay up to $50 per month for Devon's medications. The settlement agreement provided that the father's child support obligation would end "as each child attains the age of eighteen (18), marries, becomes self-supporting, enters the military service or departs this life, whichever event shall occur first." Neither the settlement agreement nor the final judgment contained any reference to Devon's mental or physical incapacity, although the parties knew she had limited physical and mental abilities.
The final judgment was amended by stipulation in 1995.[1] In the stipulation, the parties agreed to increase the father's child support to $750 per month total for both children. The stipulation was approved and incorporated in an amended final judgment rendered on 8 August 1995. The stipulation included the following paragraph:
7. This child support obligation shall cease upon the eighteenth birthday of the minor children (on July 4, 2000, with regard to Sterling Brittany Taylor, and on September 28, 2001 with regard to Devon O'Neal Taylor), unless Petitioner shall obtain an order of the court prior to those dates to extend the child support obligation, or upon the children's marriage, death, entrance into military service, or becoming self-supporting, whichever comes first.
(Emphasis supplied.)
At the time of the 1989 final judgment of dissolution and the 1995 stipulation, both parties were aware that Devon was suffering an irreversible impairment of her brain function. The damage was caused when she suffered a seizure at about the age of sixteen or eighteen months. Devon is not totally incapacitated: testimony indicates that she dresses herself, brushes her teeth, and writes well enough to communicate. She is also talented at needlepoint. While the parties expect Devon to improve to a *707 degree, they do not expect her to lead a normal, independent life. There has been no material change in Devon's condition since the amended final judgment.
Before Devon turned age eighteen, the mother petitioned for modification of Devon's child support, asking the court to extend it beyond her majority. However, the trial court did not render its order granting the mother's petition for modification until nearly a year after Devon turned eighteen, missing the cut-off date of 28 September 2001, which was specified in the stipulation. The trial court found that a literal reading of paragraph seven of the stipulation would result in a forfeiture of Devon's right to claim support as a dependent adult under section 743.07, Florida Statutes, because no order of extension was entered prior to Devon's eighteenth birthday. The court ruled that the order related back to the date the mother filed the petition for modification of Devon's child support. Thus, the court found that paragraph seven did not preclude the extension of child support, citing Ruiz v. Ruiz, 783 So.2d 361 (Fla. 5th DCA 2001) and distinguishing Brown v. Brown, 714 So.2d 475 (Fla. 5th DCA 1998). The court ordered the father "to continue to contribute support" for Devon after her eighteenth birthday pursuant to section 743.07, Florida Statutes. Because neither party had presented either evidence or argument as to the amount of support the father should pay, the court ordered the parties to attempt to resolve the amount amicably and failing that, to schedule a hearing for that purpose. In the interim, the father's obligation would remain the same as that stated in the stipulation. The court reserved jurisdiction to determine any arrearage owed by the father and to rule on the mother's attorney's fee request.

ANALYSIS
Before beginning discussion of the issue in this case, perhaps it is best to discuss what this case is not about. First, both parents testified to their continuing commitment to support Devon. Each recognized Devon's limited abilities and their obligation to support her. The father testified that he had agreed to pay more than the child support guidelines amount to support Devon because he knew she had special needs. He also testified that he attempted to help Devon create a needlepoint business to allow her to generate income, but that the mother would not cooperate. The father had also tried to establish a trust for Devon, but again, the mother would not cooperate. The mother, through counsel, agreed that she had a moral and a legal obligation to continue to support Devon. Thus, we are not concerned with parents who are attempting to avoid their obligation to support their child. The issue is whether the court presiding over the dissolution could enforce the stipulation of the parties, which required that an order modifying the final judgment to support Devon be entered before her eighteenth birthday, or whether an independent action must be filed.
First, both parents have a legal obligation to support Devon past her eighteenth birthday because she is dependent and will remain so. Section 743.07(2), Florida Statutes, provides that a court of competent jurisdiction can require parents to support a dependent child past the age of eighteen.[2] The father argues that the *708 trial court did not have jurisdiction to modify the final judgment because once Devon turned eighteen, an independent action was required to be filed, separate from the dissolution action, to determine the parents' support obligations for their dependent adult child. See Perla v. Perla 58 So.2d 689 (Fla.1952) ("Generally, the obligation of a parent to support a child ceases when the child reaches majority, but an exception arises when the child is, from physical or mental deficiencies, unable to support himself"); Hastings v. Hastings, 841 So.2d 484 (Fla. 3d DCA 2003) (same). Further, he argues that since both parties have a legal obligation to support the child, simply modifying the final judgment to enlarge the time he has to support Devon does not adjudicate the mother's responsibility. More important, he argues, the trial court could not adequately determine the father's financial obligation without considering the mother's finances and ability to pay child support.
The father relies upon this court's opinion in Brown to support his contention. In Brown this court stated:
Where, as here, the father has fulfilled his child support obligation as adjudicated in the divorce decree, an independent action must be brought to adjudicate the father's support obligation for an adult dependent child.
Id. at 477. The father argues that he fulfilled his previously adjudicated child support obligation because the amended judgment ordered support "until the minor children reach the age of eighteen, marry, die or become self-supporting." The father acknowledges that in footnote two of the Brown decision, we stated that the dissolution court would be the proper forum to enforce or modify a child support order for an adult dependent child under certain circumstances. Brown, 714 So.2d at 477, n. 2. He points out, however, that this occurs only "where the dissolution court, in the original divorce decree, adjudicated support for the child to extend beyond the age of majority." Id. The father concludes that since no judgment requiring continued support was entered before Devon became eighteen, the order modifying the final judgment was improvidently entered.
We find Brown persuasive. In Brown, the judgment incorporated the parties' separation and property settlement agreement, which provided that the father pay support for the minor child until her twenty-first birthday, the age of majority at that time. The mother petitioned for modification, alleging that the child was mentally handicapped, having been diagnosed with cerebral palsy and mental retardation prior to the entry of the divorce decree. At the time of the mother's petition, the child was twenty-six years old. This court affirmed the trial court's dismissal of the petition stating the trial court's jurisdiction to modify the father's support ended when the child turned twenty-one, as stated in the divorce decree. We noted, however, that the adult dependent child still could file an independent action for support. In the instant case, the trial court found that Brown had no application because the petition to extend child support in Brown was not filed until after the dependent child's majority, unlike the situation in this case where the petition was filed before the child reached eighteen.
*709 The trial court's attempt to distinguish the facts in Brown does not consider all of the facts in the case. It was not just the fact that the petition was filed after the child reached the age of majority that led to the dismissal in Brown. Pursuant to the specific terms of the divorce decree, the father's support obligation, "as adjudicated in the divorce decree," ended before the filing of the petition. Brown, 714 So.2d at 477. More particularly, in Brown, the following facts led to the conclusion that the father had fulfilled his child support obligations: (1) the original decree did not adjudicate support for the child beyond the age of majority, (2) the parties' settlement agreement, which had been incorporated into the final decree, specifically stated that the support obligation would terminate when the child reached twenty-one, and (3) no petition for modification or extension was filed prior to the child's reaching majority. Similarly, in this case: (1) the original decree did not adjudicate support for Devon beyond the age of majority, (2) the parties' 1995 stipulation, which was adopted by the court, specifically stated that father's support obligation would end on Devon's eighteenth birthday, unless an order of extension was obtained before that date, and (3) no order of extension was obtained prior to Devon's eighteenth birthday. The parties' stipulation required an actual order extending support before Devon's eighteenth birthday. But for the stipulation, the trial court would have had jurisdiction to extend Devon's support beyond her eighteenth birthday because the petition was filed prior to that date.
The language in Ruiz relied upon by the trial court is inapplicable given the circumstances of this case. In Ruiz, the parties' settlement agreement expressly recognized that the minor child was handicapped and "totally non-communicative." Before the child reached the age of majority, the custodial father petitioned for continued support of the child beyond the age of majority. The order was not granted until after the child turned eighteen and based on Brown, the mother argued that the court lacked jurisdiction to enter the order. This court held that the trial court properly granted post-majority support, holding that this child, unlike the child in Brown, had been "effectively adjudicated dependent" prior to reaching age eighteen.[3]
In conclusion, we hold Brown is applicable and that a separate action must be filed by the child joined by her mother. These parties bargained for the stipulation and both were represented by counsel and understood the import of that language. The father testified that had the mother obtained an order extending support before Devon's eighteenth birthday, he could have set up a trust for her that would have been advantageous for him. The father testified, without contradiction, that he approached the mother with options, and the mother either told him not to make the arrangements or that she would get back to him and never did. This is sufficient consideration for the stipulation which required that an order modifying child support be entered before the child reached eighteen. We do not find that it is violative *710 of public policy to require the parties to honor their stipulation. See DePoorter v. DePoorter, 509 So.2d 1141, 1144 (Fla. 1st DCA 1987). Further, we recognize that the right to support for an adult dependent child belongs to the child and not the parent. Thus, the child and the mother can file a separate action for support through her mother. Brown, 714 So.2d at 477.
REVERSED.
PETERSON, J., concurs in part with opinion.
TORPY, J., dissents with opinion.
PETERSON, J., concurring in part.
I agree with the result reached by Judge Thompson and his recognition that the right to support belongs to the child and not the mother. Once Devon reached eighteen years of age, she or a guardian, appointed pursuant to chapter 744, Florida Statutes (2002), were the only individuals authorized to seek support under section 743.07, Florida Statutes (2002). The mother had no continuing right to directly receive Devon's section 743.07 payments for support without the safeguards of, and accountability required by the guardianship statutes.
I acknowledge that my stance is not consistent with Fagan v. Fagan, 381 So.2d 278 (Fla. 5th DCA 1980), cited in the dissent for the proposition that Devon's mother has standing to make the claim on her behalf. Fagan required the father to make payments to the mother of a dependent child who had reached majority, stating that the mother was the proper party to bring an enforcement suit when payments were not made. No authority for the pronouncement was cited, but a footnote indicates that section 61.13(1), Florida Statutes (1978), was available as a remedy if any doubt or problem arose concerning the use of funds for the dependent's benefit or should the dependent no longer reside with the mother. Section 61.13(1)(a) makes reference to the continuing jurisdiction for modification found necessary when a child reaches majority and provides that a court has continuing jurisdiction after initially entering a child support order to require an obligee to account. However, nothing in section 61.13(1)(a) dispenses with the necessity of an appointment of a guardian for an [sic] adult entitled to receive support. I am of the opinion that section 61.13(1)(a) merely enables the court ordering support to maintain jurisdiction to modify support and to require either the adult obligee or guardian of the incapacitated adult obligee to account to the court for the support ordered by it. Section 61.13(1)(a) does not enable either parent to receive support on behalf of the "obligee" as that term is used in the subsection and a term that I interpret to mean the adult dependent child entitled to receive support or the court-appointed guardian for that adult child.
Unless a guardian is appointed for a person eighteen years of age or older, it becomes awkward for a representative of that person to deal in the business community. For example, is the father required to make checks payable to the mother for Devon's support or directly to Devon? If the checks are made to Devon, what authority does the mother have to negotiate the checks? How are bank accounts or property interests to be titled?
Finally, section 744.301, Florida Statutes (2002), provides that parents are natural guardians of their children during minority. It is my view that the mother lost all authority to represent Devon's interest or enforce any section 743.07 support when Devon reached majority. Only Devon or a guardian appointed pursuant to chapter 744, Florida Statutes, has the right to seek *711 section 743.07 support against either or both the mother and father after majority was attained. The suggestion that the mother may be entitled to bring the action pursuant to Florida Rule of Civil Procedure 1.210(b) as Devon's next friend is noted but not reflected in the record. The motion has simply requested continued payments for child support as well as for the mother's attorney's fees. Nothing in the final judgment suggests accountability by the mother as a fiduciary for Devon. I find this troubling as all funds collected should be totally for Devon. Avenues are available to the mother to act on behalf of the child, and this court should not lose sight of the fact that they were not taken and should not be supplied after the fact.
TORPY, J., dissenting.
I disagree with the result reached by the majority and, therefore, respectfully dissent. Clearly, Devon has a substantive right under common law (preserved by section 743.07(2), Florida Statutes (2001)) to continued support beyond the age of majority. Perla v. Perla, 58 So.2d 689 (Fla.1952); Brown v. Brown, 714 So.2d 475 (Fla. 5th DCA 1998). No challenge has been made to the lower court's jurisdiction over the subject matter or over the parties. Appellant further concedes that Appellee had standing to petition the court for support for Devon. Thus, the only argument available to Appellant, and the one with which my esteemed brother Judge Thompson agrees, is that the mother's agreement creates a procedural bar that prevents the court from entering judgment in the original divorce action. I am not persuaded by this argument for several reasons.
First, as no one disputes, the substantive right to continued support belongs to Devon, not her mother. Although Devon's mother initiated the claim, it was made on behalf of Devon. Thus, I fail to see how Devon's mother's signature on the stipulation can affect Devon's right to collect support. Certainly, Devon's mother could not barter away Devon's substantive right to support. See Serio v. Serio, 830 So.2d 278, 280 (Fla. 2d DCA 2002) (parents may not waive child support by agreement because the right belongs to the child). It logically follows, then, that Devon's mother has no authority to waive her procedural remedy.
Second, even if the stipulation is otherwise binding and applicable, the order was "obtained" prior to Devon's eighteenth birthday because the order relates back to the date on which the petition was filed. Ruiz v. Ruiz, 783 So.2d 361 (Fla. 5th DCA 2001). If this were not the rule, the court's power to grant a petition to modify might be vitiated by pretrial delays or a crowded court calendar, even when the petition is filed well in advance of the child's eighteenth birthday.
Finally, the stipulation relates only to extensions of child support. The support to which Devon is entitled as a disabled adult is not "child support," because Devon is no longer a child. At the very least the stipulation is ambiguous and should be construed in Devon's favor because public policy favors that she receive her support without delay.
Judge Thompson's reliance upon Brown is misplaced in my view, and the trial court was correct in distinguishing that case. In Brown, the petition to modify was filed after the child reached the age of eighteen. That was the only relevant fact leading the court to conclude that the lower court lacked jurisdiction. Here, Appellant concedes that the trial court retained jurisdiction to enter the challenged order, and even absent his concession, this conclusion is mandated by our decision in Ruiz. Brown, therefore, is inapposite.
*712 Although Judge Thompson makes much of the fact that Appellant professes to acknowledge his obligation of support, I fail to see the relevance of this discussion to the legal issue here. Even if relevant, however, I don't interpret this record in the same way as does my colleague. Judge Thompson says that we are "not concerned [here] with parents who are attempting to vitiate their obligation to support their child." That is exactly what concerns me in this case. While these parents are mired in the typical accusations and recriminations that are too frequently associated with post-divorce fallout, it is Devon who continues to suffer. Under these circumstances, it is hard for me to express even the slightest praise for either parent, but I am especially skeptical of Appellant's seemingly disingenuous assertion that he is acting in Devon's best interest, while he maintains a hyper-technical procedural argument, for some apparent tactical reason, with the result being that Devon's acknowledged right to support has been delayed by many months.
As to the concurring opinion of my learned colleague Judge Peterson, although I am initially somewhat drawn to the logic in what he argues, in my view, his position is not properly advanced here because, as he readily admits, it contravenes a prior precedent of this court and is therefore more appropriately addressed by the full court. Moreover, Appellant concedes that Devon's mother had standing under Fagan v. Fagan, 381 So.2d 278 (Fla. 5th DCA 1980), and Appellant himself has not urged that Fagan was wrongly decided.
Even if Judge Peterson's position is properly advanced, however, I fail to see a good reason why we should put Devon through the added procedural hoop, and concomitant expense and delays, of a formal guardianship proceeding merely to obtain an order that the support, which everyone appears to acknowledge is due, be continued. I find nothing in the guardianship law that negates the right of a parent as next friend of a mentally disadvantaged adult to advance a right on behalf of the disadvantaged adult. Indeed, Florida Rule of Civil Procedure 1.210(b)[1] expressly authorizes this and further provides a mechanism through which the trial judge may protect the incompetent person:
An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.
Fla. R. Civ. P. 1.210(b) (emphasis added). Thus, our rules of procedure specifically address Judge Peterson's accountability concerns.
In the final analysis, although the majority might take solace that this procedural hair-splitting will not adversely affect Devon because her right to support will be recognized in another forum, I am not likewise comforted, because, for Devon, this is clearly a case of justice delayed being justice denied.
I would affirm.
NOTES
[1] During a turbulent period in the mother's life, Devon lived with the father and subsequently returned to live with the mother.
[2] 743.07 Rights, privileges, and obligations of persons 18 years of age or older.

(1) The disability of nonage is hereby removed for all persons in this state who are 18 years of age or older, and they shall enjoy and suffer the rights, privileges, and obligations of all persons 21 years of age or older, except as otherwise excluded by the State Constitution immediately preceding the effective date of this section and except as otherwise provided in the Beverage Law.
(2) This section shall not prohibit any court of competent jurisdiction from requiring support for a dependent person beyond the age of 18 years when such dependency is because of a mental or physical incapacity which began prior to such person reaching majority....
[3] This court also stated, however, "[m]oreover, the instant petition by the father was filed before that time. The court's order in respect to that petition relates back to the date of filing the petition." Ruiz, 783 So.2d at 362. This statement appears to be dictum in the Ruiz case. Nonetheless, while it is true that the relief granted in the order "relates back" to the filing of the petition, it is not clear how the "date" of the order would "relate back" to the filing of the petition such that it could be said that the order was "obtained" on the date the petition was filed.
[1] Rule 1.210(b) was made applicable to family cases through Florida Family Law Rule of Procedure 12.020.