Hillsborough-northern judicial district
No. 2009-520

IN THE MATTER OF ROBERTA L. (PIERCE) SCOTT AND JAMES P. PIERCE

Argued: April 8, 2010
Opinion Issued: June 3, 2010

*Wiggin & Nourie, P.A.*, of Manchester (*Andrea Q. Labonte* on the brief and orally), for the petitioner.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, Roberta L. (Pierce) Scott (Wife), appeals an order recommended by a Marital Master (*Dalpra*, M.) and approved by the Superior Court (*Smukler*, J.) denying her motion for certain payments from the respondent, James P. Pierce (Husband). We affirm in part, vacate in part and remand.

*I. Facts*

The record reveals the following facts. The parties married in Massachusetts in 1982 and had two children, a son born in 1983 and a daughter born in 1986. In April 1989, they divorced pursuant to a Massachusetts decree, which expressly incorporated their separation agreement. Under the decree, as modified in October 1989, Husband was to pay child support in the amount of $98 per week plus $15 per week for health insurance premiums until the children were "emancipated," as defined by the decree. In their original stipulation, the parties agreed that their children "should receive the best college education available to them" and that they would meet in the future to discuss "the financial responsibility each of them shall bear" for their children's college expenses. The parties agreed that Massachusetts law governed the interpretation of their agreement and their rights thereunder.

In April 1997, the parties agreed to modify certain aspects of their divorce decree. They stipulated that Husband's total child support obligation would remain $113 per week, but that this amount would be allocated differently: $73 would be for child support, and $40 per week would be placed in an escrow account for Husband's use to visit the children, with whom the stipulation allowed Wife to relocate to California. Any amount not expended from the escrow account by March 30 each year would be deposited in a college education account for the children.

Additionally, the parties agreed to modify the duration of Husband's child support obligation by redefining the circumstances under which the children were "emancipated." Under the original decree, each child was

emancipated at age eighteen, unless the child attended college, in which case the child would be emancipated at age twenty-one. By contrast, pursuant to the 1997 stipulation, emancipation occurred when the child reached age twenty-one, unless the child entered college in the September after graduating from high school. In that case, emancipation occurred when the child graduated from college, no longer lived with Wife, or reached the age of twenty-three, whichever occurred first. *See* Mass. Gen. Laws Ann. ch. 208, § 28 (West 2007). The stipulation did not alter the college expense provision of the original decree. A Massachusetts court approved the parties' 1997 stipulation.

In 2002, after Husband moved to New Hampshire, Wife filed a petition in New Hampshire asking the trial court, among other things, to review the amount of child support under New Hampshire's child support guidelines because more than three years had elapsed since the previous child support order. Thereafter, she registered the Massachusetts decree and orders in New Hampshire. *See* RSA 546-B:47 (2007).

The trial court granted Wife's petition in October 2003, increasing the amount of Husband's child support for the two children to $187 per week, less the $40 intended for the travel/college escrow fund, and ordering that he contribute $3,000 per year to the college expenses of the parties' son. The 2003 order also required Husband to pay Wife an additional $40 per week toward the $9,360 arrearage he owed to the travel/college escrow account. The 2003 order did not address whether Husband had to contribute to the daughter's eventual college expenses, but required Wife to consult with him about the daughter's plans.

In June 2008, Husband filed a petition to terminate his child support obligations on the ground that his son was older than twenty-three, and his daughter had graduated from college. Wife cross-moved, asking the court to order Husband to pay her: (1) $9,360 plus interest in arrearages owed to the travel/college escrow account as of the date of the trial court's 2003 order and $9,760 plus interest in arrearages owed to that account from the date of the 2003 order to the date of the daughter's graduation from college; (2) $12,000 plus interest for the son's college expenses; (3) a reasonable amount for the daughter's college expenses; and (4) $4,140 plus interest for health insurance premiums between February 2003 and May 2008.

The trial court granted Husband's motion, terminating his child support obligation. Wife does not challenge this part of the trial court's order on appeal. With respect to Wife's cross-motion, although the court found that Husband had not complied with its 2003 order by paying $3,000 per year for the son's college expenses, it ruled that under New Hampshire law, this obligation was unenforceable after February 2, 2004. *See* RSA 458:17, XI-a (2004) (effective February 2, 2004; repealed and recodified as RSA 461-

A:14, V, effective October 1, 2005). The court also found that even if Husband owed an arrearage for the son's college expenses, "any alleged arrearage is significantly less than the amount of child support he paid through May 2008," which, the court concluded, he should not have paid. Because under New Hampshire law, child support terminates when a child turns eighteen or ends his or her high school education, whichever is later, see RSA 461-A:14, IV (Supp. 2009), and because Husband continued to pay child support for the daughter while she was in college, the court reasoned that it would be inequitable to require Husband to reimburse Wife for the amounts she claimed. This appeal followed.

## II. Standard of Review

"The court's powers in custody, maintenance, and education of children in divorce and separation cases are conferred entirely by statute. We afford broad discretion to the trial court in divorce matters, and will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law." *In the Matter of Johnson & Johnson*, 158 N.H. 555, 558 (2009) (quotation omitted). "The party challenging the court's order has the burden of showing that the order was improper and unfair." *Id.* (quotation omitted).

## III. Discussion

### A. Travel/College Escrow Account Arrearages

Wife first argues that the trial court erred when it declined to order Husband to pay the arrearages to the travel/college escrow account, which she contends are equal to $9,360 until the date of the court's 2003 order and $9,760 from the date of the court's 2003 order to the date of the daughter's graduation from college, plus interest. The trial court declined to order these arrearages because it believed that although Husband paid child support for the parties' daughter until she graduated from college, he was not obligated to do so. Because the amount of child support Husband paid for the daughter exceeded the travel/college escrow account arrearages, the court ruled that they were no longer owed. Wife contends that the trial court's reasoning is flawed under the Uniform Interstate Family Support Act (UIFSA). See RSA ch. 546-B (2007). We agree.

### 1. UIFSA In General

"UIFSA is a model act adopted by the National Conference of Commissioners on Uniform State Laws at the behest of Congress in 1992 and

revised in 1996." *Marshak v. Weser*, 915 A.2d 613, 615 (N.J. Super. Ct. App. Div. 2007). It was intended to "bring greater efficiency to the process of interstate child support enforcement." Comment, *Making Sense of the Changes: The 2001 Amendments to UIFSA*, 20 J. AM. ACAD. MATRIM. LAWYERS 323, 323 (2007). UIFSA "governs the procedure for establishing, enforcing, and modifying child and spousal support orders and for determining parentage when more than one state is involved in these proceedings." Annotation, *Construction and Application of Uniform Interstate Family Support Act*, 90 A.L.R. 5TH 1, 1 (2001). "[B]y 1998, all 50 states and the District of Columbia had adopted [UIFSA] (1996) as a requirement for receipt of federal funds for child support enforcement." Morgan ed., *The Date of Termination as a "Nonmodifiable Aspect" of a Child Support Order Under Section 611 of UIFSA*, 16 No. 4 DIVORCE LITIG. 60, 60 (April 2004). New Hampshire enacted UIFSA in 1997, effective January 1, 1998. *See* Laws 1997, 263:32. Since New Hampshire adopted UIFSA, the National Conference of Commissioners on Uniform State Laws has amended the uniform act twice, once in 2001, and again in 2008. *See* Symposium, *Uniform Interstate Family Support Act*, 43 FAM. L.Q. 75, 83 (2008).

■ To interpret UIFSA, we rely not only upon our ordinary rules of statutory construction, but also upon the official comments to UIFSA. *See Wills v. Wills*, 745 N.W.2d 924, 928 (Neb. Ct. App. 2008); *cf. Bendetson v. Killarney, Inc.*, 154 N.H. 637, 643 (2006) (holding that we will look to the official comments of the model act for guidance on the intended meaning of the election statute); *Estate of Gordon-Couture v. Brown*, 152 N.H. 265, 273 (2005) (because language of New Hampshire statute is nearly identical to that of model act, we will look to model act as well as to similar statutes from other states to interpret New Hampshire statute); *State v. Donohue*, 150 N.H. 180, 183 (2003) (reviewing official comments of Model Penal Code for guidance to interpret analogous New Hampshire statute). Under our ordinary rules of statutory construction, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *In re Alexis O.*, 157 N.H. 781, 785 (2008). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We will review legislative history, however, to aid our analysis if the statutory language is ambiguous or subject to more than one reasonable interpretation. *Id.* We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *Id.*

Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. *Id.* This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *Id.*

UIFSA consists of nine articles that supply procedural and jurisdictional rules for three types of proceedings within the context of child support enforcement. Peters, *International Child Support: The United States Striving Towards a Better Solution*, 15 NEW ENG. J. INT'L & COMP. L. 91, 106 (2009). These proceedings are: (1) a proceeding to establish a child support order when there is no prior child support order; (2) a proceeding to enforce an existing child support order; and (3) a proceeding to modify an existing child support order. *Id.* at 106-07; *see* RSA 546-B:31-:38 (establishing order), :39-:46 (enforcing order), :47-:52 (modifying order).

Under UIFSA, a New Hampshire court may modify a child support order issued in another state when the original child support order has been registered here and the court finds that: (1) the child, the obligee and the obligor no longer reside in the state that issued the original order; (2) the petitioner seeking modification is not a resident of this state; and (3) the respondent is subject to personal jurisdiction here. *See* RSA 546-B:49, I(a). A New Hampshire court, however, "may *not* modify any aspect of a child support order that may not be modified under the law of the issuing state." RSA 546-B:49, III (emphasis added). The "issuing state" is the state that issued the original support order. RSA 546-B:1, IX.

### 2. Application of UIFSA

■ In this case, pursuant to UIFSA, New Hampshire had jurisdiction in 2003 to modify the parties' Massachusetts child support orders because the parents and their children no longer resided in Massachusetts and Wife, who sought modification, did not reside here, although Husband did. *See* RSA 546-B:49, I(a). New Hampshire modified the Massachusetts child support orders in 2003 when it increased the weekly amount of child support. Once this occurred, New Hampshire became the issuing state, assumed continuing exclusive jurisdiction over the child support order, and obtained the authority to apply its own substantive law "to any provision of the child support order that could have been modified under Massachusetts law." *Groseth v. Groseth*, 600 N.W.2d 159, 168 (Neb. 1999); *see* Unif. Interstate Family Support Act § 611 (amended 2008), 9-IB U.L.A. 255, 259 (2005); *In re Marriage of Crosby & Grooms*, 10 Cal. Rptr. 3d 146, 151-52 (Ct. App. 2004).

Despite becoming the issuing state, New Hampshire could not modify those aspects of the Massachusetts orders that were not modifiable under Massachusetts law. In effect, Massachusetts law continues to govern any

provision that could not be modified under Massachusetts law. *See* RSA 546-B:49, III; Symposium, *supra* at 136-37 (discussing 2001 amendments).

■ In this case, Massachusetts law governs the duration of Husband's child support obligation because, under UIFSA, duration is a *non-modifiable* aspect of an issuing state's original child support order. *See* Unif. Interstate Family Support Act § 611 (amended 2008), 9-IB U.L.A. 446 (2005). For example, the official comments to the 1996 version of UIFSA explain that if the original child support order ordered child support through age twenty-one, and the law of the new state ends the support obligation at age eighteen, the new state may not modify the original order to terminate child support at age eighteen. *See id.*

The 2001 amendments to UIFSA confirm that the duration of an obligor's child support obligation is non-modifiable. As the official comments to those amendments state, although the initial child support order "may be modified and replaced by a new controlling order. . . , the *duration* of the child-support obligation remains constant, even though virtually every other aspect of the original order may be changed." *Id.* at 258-59 (emphasis added). As amended in 2001, this section of UIFSA now reads:

> (d) In a proceeding to modify a child-support order, the law of the State that is determined to have issued the initial controlling order governs the duration of the obligation of support. The obligor's fulfillment of the duty of support established by that order precludes imposition of a further obligation of support by a tribunal of this State.

*Id.* at 255 (emphasis omitted). The official comment to this provision explains:

> From its original promulgation UIFSA determined that the duration of child-support obligation should be fixed by the controlling order. If the language was insufficiently specific before . . . 2001, the amendments should make this decision absolutely clear. The original time frame for support is not modifiable unless the law of the issuing State provides for modification of its duration. . . . In sum, absent tribunal error the first child support order issued under UIFSA will invariably be the initial controlling order. . . . Once a controlling order is identified . . . , the duration of the support obligation is fixed.

*Id.* at 258. Although New Hampshire has not adopted the 2001 amendments, they provide insight into the intended meaning of New Hampshire's existing statute. *See Spencer v. Spencer*, 882 N.E.2d 886, 890 (N.Y. 2008).

■ Because Massachusetts law governs the duration of Husband's child support obligation, and because under Massachusetts law, a divorced parent may be required to pay child support until the child graduates from college, the trial court erred by excusing Husband's failure to comply with its 2003 order regarding payment to the travel/college escrow account on the ground that Husband had paid child support he did not owe. Therefore, we vacate this portion of the trial court's decision and remand for further proceedings consistent with this opinion.

*B. College Expenses*

Wife next argues that the trial court erred when it applied New Hampshire law to determine whether Husband was required to contribute to the children's college expenses. In making this assertion, she relies upon UIFSA and the choice of law provision in the parties' original decree. We hold that the trial court did not err by applying New Hampshire law.

*1. UIFSA*

We first address Wife's assertion under UIFSA. To determine whether it was proper for the trial court to apply New Hampshire law to the payment of the children's college expenses, we must examine whether payment of college expenses is modifiable under Massachusetts law. If payment of college expenses is modifiable under Massachusetts law, then the trial court did not err by applying New Hampshire law to this aspect of the parties' divorce. *See* RSA 546-B:14, :49, II; Unif. Interstate Family Support Act § 611 (amended 2008), 9-IB U.L.A. 255, 259 (2005); *In re Marriage of Crosby & Grooms*, 10 Cal. Rptr. 3d at 151-52; *Groseth*, 600 N.W.2d at 168.

■ Massachusetts General Laws chapter 208, § 28 provides, in pertinent part:

> The court may make appropriate orders of maintenance, support and education of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance. The court may make appropriate orders of maintenance, support and education of any child who has attained age twenty-one but who has not attained age twenty-three, if such child is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance due to the enrollment of such child in an educational program, excluding educational costs beyond an undergraduate degree.

This provision allows, but does not mandate, that divorced parents contribute to the college expenses of their children. College expenses are, thus, subject to modification under Massachusetts law.

██ Massachusetts case law supports this conclusion. The parties here included a college expense provision in their original separation agreement, which was expressly merged with their Massachusetts divorce decree. This provision provided:

> A.   The Husband and Wife agree that the children should receive the best college education available to them in light of their aptitude and interests. One year before a child is scheduled to attend college, the parties shall meet and discuss the financial responsibility each of them shall bear for the cost of college tuition, room, board, books and transportation fees of the child. If they cannot resolve the issue, either party may petition the Middlesex Probate Court for a resolution of the matter.

> B.   The Husband and Wife agree that the choice of educational institution for the children shall be made on the basis of joint consultation with due regard for the children's aptitudes, interests and desires.

The parties' divorce decree stated that all "provisions relating to the children" merged with the judgment. Under Massachusetts law, therefore, this provision merged with the decree and could be modified only for a material change of circumstances. *See Bercume v. Bercume*, 704 N.E.2d 177, 181-82 (Mass. 1999); *Mandel v. Mandel*, 906 N.E.2d 1016, 1019 (Mass. App. Ct. 2009).

██ As the original decree did not require the parties to pay their children's college expenses in any specific proportion or amount, under Massachusetts law, had the parties been unable to agree about payment of college expenses, they would have had to seek court modification of the original decree. The fact that a child was nearing college age, wanted to attend college, and was preparing to do so, would constitute a material change of circumstances sufficient to justify modifying the decree. *Cabot v. Cabot*, 774 N.E.2d 1113, 1122 (Mass. App. Ct. 2002). The trial court would retain discretion, however, to decide whether such expenses were warranted. In *Purdy v. Colangelo*, 810 N.E.2d 844 (Mass. App. Ct. 2004), for instance, the trial court declined to award these expenses, and the appellate court affirmed, when the wife did not request the expenses until after the child had already graduated from college. Thus, particularly under the

circumstances here, payment of college expenses is modifiable under Massachusetts law. Therefore, pursuant to UIFSA, the trial court correctly applied New Hampshire law.

### 2. Parties' Choice of Law

■ The parties' choice of law provision does not alter this result. Under New Hampshire law, "[w]here parties to a contract select the law of a particular jurisdiction to govern their affairs, that choice will be honored if the contract bears any significant relationship to that jurisdiction." *Hobin v. Coldwell Banker Residential Affiliates*, 144 N.H. 626, 628 (2000) (quotation omitted). Under the approach set forth in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, which New Hampshire has adopted, *see Glowski v. Allstate Ins. Co.*, 134 N.H. 196, 197-98 (1991), the parties' choice of law will *not* be honored when applying the chosen law would be contrary to a fundamental public policy of the state of the otherwise applicable law (here, New Hampshire). RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b) (1971). We hold that to honor the parties' choice of law provision in their original decree would violate New Hampshire public policy, as reflected in UIFSA.

We find *In re the Marriage of Crosby & Grooms*, 10 Cal. Rptr. 3d at 152-53, instructive. In that case, the parties divorced in Idaho, and their agreement included a provision requiring that its interpretation be governed by Idaho law. *In re Marriage of Crosby & Grooms*, 10 Cal. Rptr. 3d at 147-48. Before the parties signed the settlement agreement, the wife moved to California, and the husband moved to Oregon. *Id.* at 148. A California county district attorney's office filed a motion in California to modify the husband's child support obligation pursuant to California law. *Id.* The trial court granted the motion and applied California's child support guidelines in doing so. *Id.* The husband appealed, arguing, in part, that this was error because of the parties' choice of law provision. *Id.* at 152.

The appellate court disagreed, reasoning that requiring that Idaho law apply would, among other things, undermine the mandate of UIFSA and be contrary to public policy. *Id.* The court explained that "use of Idaho's child support guidelines would be contrary to a fundamental policy of California law, i.e., that the UIFSA be followed in choosing the forum state and the law applicable to an interstate child support modification." *Id.* at 153. Additionally, the court observed, because the wife lives in California, and, under UIFSA, California is the correct forum for modifying the child support order, California has a materially greater interest than Idaho in determining the amount of child support. *Id.*

■ We find this reasoning persuasive. Here, as in the California case, neither the parties nor their children live in the original forum state (Massachusetts). New Hampshire, like California, has adopted UIFSA and applying Massachusetts' law regarding the payment of college expenses would be contrary to a fundamental public policy of New Hampshire, "i.e., that . . . UIFSA be followed in choosing the forum state and the law applicable to the interstate child support modification." *Id.* Given that Husband lives in New Hampshire and New Hampshire is the proper forum for modifying the Massachusetts child support order under UIFSA, New Hampshire has a materially greater interest than Massachusetts in resolving this dispute. Accordingly, we hold that despite the parties' choice of law provision, New Hampshire law applies to Husband's obligation to pay college expenses. *See Wagner v. Wagner*, 885 So. 2d 488, 494 (Fla. Dist. Ct. App. 2004) (applying Florida law despite parties' agreement that California law would govern because, now that the parties and their children live in Florida, Florida is the only state with a legitimate interest in dispute); *cf. Hale v. Hale*, 108 P.3d 1012, 1014 (Kan. Ct. App. 2005) ("Although there are circumstances in which courts, and parties to a certain extent, may choose which state's law will apply in a given dispute, when the choice of law is dictated by statute, courts do not have the authority to contradict such mandates.").

### 3. New Hampshire Law

Having concluded that the parties' choice of law provision does not govern here and that pursuant to UIFSA, New Hampshire law applies to the obligation to contribute to the children's college expenses, we turn to whether the trial court erred when it applied New Hampshire law.

We first address Husband's obligation to pay the son's college expenses. Husband was ordered to pay these expenses in 2003. At that time, under New Hampshire law, "the trial court had broad discretionary powers to order divorced parents to contribute to their children's college expenses." *In the Matter of Donovan & Donovan*, 152 N.H. 55, 61 (2005) (quotation omitted). New Hampshire law changed, effective February 2, 2004, when the pertinent statute was amended to preclude a trial court from ordering a parent to contribute to an adult child's college expenses. *See id.*; RSA 458:17, XI-a.

■ The trial court applied this amendment retroactively, ruling that the amendment nullified its 2003 order mandating payment of the son's college expenses. This was error. We have repeatedly held that the February 2, 2004 amendment only applies prospectively. *See In the Matter of Donovan & Donovan*, 152 N.H. at 63-64; *In the Matter of Cole & Ford*, 156 N.H. 609, 612 (2007); *In the Matter of Forcier & Mueller*, 152 N.H. 463, 466 (2005).

Because the 2003 order that required Husband to pay $3,000 per year toward the son's college expenses predated the February 2, 2004 change in the law, the trial court retained the authority to enforce its 2003 order. *See In the Matter of Cole & Ford*, 156 N.H. at 612. Because we conclude that the trial court misapplied New Hampshire law with respect to Husband's contribution to the son's college expenses, we vacate this portion of its order and remand for it to determine the amount Husband owes.

■■■ We next address payment of the daughter's college expenses. Because there is no order requiring Husband to pay a set percentage of or a specific dollar amount toward the daughter's college expenses predating the February 2, 2004 change in the law, and because that change operates prospectively, the trial court had no jurisdiction to issue a new order for payment of these expenses. *See In the Matter of Donovan & Donovan*, 152 N.H. at 63-64; *In the Matter of Goulart & Goulart*, 158 N.H. 328, 330-32 (2009). We, therefore, affirm the trial court's decision denying Wife's request to order Husband to contribute to these expenses.

### C. Health Insurance Premium Contribution

■■■ Wife next contends that the trial court erred when it declined to order Husband to pay $4,140 to Wife to account for the $15 per week he failed to pay towards the cost of health insurance premiums from February 2003 until May 2008, when the daughter graduated from college. Although the parties' 1989 decree required Husband to pay Wife $15 per week for health insurance premiums, the parties' 1997 stipulation eliminated this requirement. Pursuant to the 1997 stipulation, Husband continued to owe Wife $113 in child support, but whereas the 1989 decree allocated $15 of this amount to a medical premium payment, the 1997 stipulation did not. The court's 2003 order further modified the amount of Husband's child support obligation when it required him to pay $187 per week in child support, less the $40 per week contribution to the travel/college escrow account. Based upon the plain meaning of the parties' 1997 stipulation and the trial court's 2003 order, therefore, Husband does not owe Wife $15 per week for health insurance premiums. The trial court, thus, did not err in this respect.

*Affirmed in part; vacated in part; and remanded.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.