******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BEVERLY STUDER *v.* JOHN CARL STUDER
(SC 19508)

Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued November 13, 2015—officially released February 23, 2016*

*Jeffrey D. Ginzberg*, for the appellant (defendant).

*Alexander H. Schwartz*, for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. The sole issue in this appeal is whether the trial court properly concluded that the duration of a child support order was governed by the law of the state in which it was originally issued. The defendant, John Carl Studer, appeals from the judgment of the trial court modifying the duration of his child support obligation and ordering that he pay child support indefinitely to the plaintiff, Beverly Studer, for the benefit of their autistic child[1] in accordance with Florida law.[2] On appeal, the defendant contends that the trial court improperly applied Florida law in determining the duration of his child support obligation. We disagree with the defendant's claim and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The parties' marriage was dissolved in Florida in 2002. The amended final judgment of dissolution of marriage (Florida judgment) provided that the defendant would pay child support until the child "reaches the age of [eighteen], become[s] emancipated, marries, dies, or otherwise becomes self-supporting" or "until [the] age [of nineteen] or graduation from high school whichever occurs first, if a child reaches the age of [eighteen] and is still in high school and reasonably expected to graduate prior to the age of [nineteen]." Both parties were aware that the child was autistic at the time of the dissolution and the Florida judgment specifically referenced the child's condition.

After the Florida judgment was rendered, the parties and the child moved to Connecticut.[3] In 2003, the defendant filed a certified copy of the Florida judgment in Connecticut Superior Court and moved to modify the amount of his child support and alimony obligations. The court granted the defendant's motion to modify and reduced the amount of child support and alimony the defendant was required to pay.[4]

In 2010, the plaintiff filed a postjudgment motion for postmajority support for the child. The plaintiff claimed that, as a result of the child's autism, she would not graduate from high school until after her twenty-first birthday. Consequently, the plaintiff claimed that the child was entitled to support beyond her eighteenth birthday under Florida law. Applying Florida law, the court granted the plaintiff's motion for postmajority support and ordered the defendant to continue paying child support until the child's high school graduation (2010 support order). The court further found that there was an arrearage in support payments owed to the plaintiff and ordered the defendant to pay that sum as well.

Before the child's graduation from high school in June, 2013, the plaintiff filed a second motion for post-

majority support seeking to extend the defendant's child support obligation indefinitely beyond the child's high school graduation. The trial court concluded that under General Statutes § 46b-71 (b),[5] Florida law controlled the duration of the defendant's child support obligation and ordered the defendant to pay child support indefinitely. This appeal followed.

On appeal, the defendant claims that the trial court improperly concluded that Florida law, rather than Connecticut law, governed the duration of his child support obligation. In support of his claim, the defendant asserts that the Florida judgment had been filed in Connecticut and that the amount of child support specified in the Florida judgment had been previously modified by a Connecticut court. The defendant also asserts that, because Connecticut law would not have allowed post-majority support in this case,[6] the trial court improperly extended the defendant's child support obligation beyond the terms of the 2010 support order, which provided that child support would terminate upon the child's graduation from high school. In response, the plaintiff contends that Florida law governs the duration of the defendant's child support obligation because the initial child support order in the present case was issued in Florida. We agree with the plaintiff and, accordingly, affirm the judgment of the trial court, albeit on different grounds.

This appeal requires that we examine the provisions of our Uniform Interstate Family Support Act (act), General Statutes (Rev. to 2013) § 46b-212 et seq.[7] and the uniform version of that act (uniform act) as promulgated in our sister states. See Uniform Interstate Family Support Act of 2001, 9 U.L.A. (Pt. IB) 159 (2005). The uniform act, "which has been adopted by all states, including Connecticut, governs the procedures for establishing, enforcing and modifying child and spousal support, or alimony, orders, as well as for determining parentage when more than one state is involved in such proceedings." (Footnote omitted.) *Hornblower* v. *Hornblower*, 151 Conn. App. 332, 333, 94 A.3d 1218 (2014). The plaintiff claims that General Statutes (Rev. to 2013) § 46b-213q (d) applies to the present case.[8] We agree.

In examining the issues in the present appeal, "we are guided by the well established principle that [i]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . We are also guided by the plain meaning rule for statutory construction." (Citations omitted; internal quotation marks omitted.) *Cales* v. *Office of Victim Services*, 319 Conn. 697, 701,    A.3d    (2015); see also General Statutes § 1-2z.

In accordance with § 1-2z, we begin with the relevant statutory text. General Statutes (Rev. to 2013) § 46b-213q (d) provides in relevant part: "In a proceeding to modify a child support order, the law of the state that

is determined to have issued the *initial controlling order* governs the duration of the obligation of support. . . ."[9] (Emphasis added.) Resolution of this appeal, therefore, requires us to determine the meaning of the term, "initial controlling order . . . ." The term "initial controlling order" is not defined in § 46b-213q, nor is it defined in the provision setting forth the definitions used within the act, General Statutes (Rev. to 2013) § 46b-212a. "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Efstathiadis* v. *Holder*, 317 Conn. 482, 488, 119 A.3d 522 (2015).

The term "initial" is defined with substantial similarity in a number of dictionaries. Webster's Third New International Dictionary (2002) defines "initial" as "of or relating to the beginning . . . ." The American Heritage College Dictionary (4th Ed. 2007) defines "initial" as "[o]f, relating to, or occurring at the beginning" or "first . . . ." Lastly, the Oxford English Dictionary (2d Ed. 1991) defines "initial" as "[o]f or pertaining to a beginning," "existing at, or constituting, the beginning of some action or process," "existing at the outset" or "primary . . . ." Using the definition of "initial" indicates that the legislature and the drafters of the uniform act intended for the first state that issues a child support order to control the duration of the child support obligation.

"Furthermore, we note that [i]n interpreting a statute, [r]elated statutory provisions . . . often provide guidance in determining the meaning of a particular word. . . . In accordance with § 1-2z, we next turn to other related statutes for guidance." (Citations omitted; internal quotation marks omitted.) *Lieberman* v. *Aronow*, 319 Conn. 748, 759 A.3d (2015). The act itself, in turn, expressly mandates that its provisions be construed "to promote uniformity of the law with respect to its subject matter" among the other states that have enacted the uniform act. General Statutes (Rev. to 2013) § 46b-213v. Accordingly, we find it helpful to turn to the case law of other jurisdictions that have enacted similar statutory provisions.

Courts in jurisdictions that have adopted a statute analogous to § 46b-213q (d), or have considered the potential effect of the adoption of such a statute, regard the law of the state that has issued the first child support order between the same parties for the benefit of a particular child as controlling the duration of the child support obligation under the language of the uniform act. See, e.g., *Lunceford* v. *Lunceford*, 204 S.W.3d 699, 708 (Mo. App. 2006) (noting that, had Missouri adopted

2001 amendments to uniform act, "the question of whether the Missouri trial court properly ordered [the] [f]ather to continue child support beyond the termination date provided in the Kansas divorce decree would be easily addressed"); *Wills* v. *Wills*, 16 Neb. App. 559, 565, 745 N.W.2d 924 (2008) (holding that District Court improperly extended duration of child support obligation initially issued in New Mexico to conform with age of majority in Nebraska).

For example, in *In re Schneider*, 173 Wn. 2d 353, 369–71, 268 P.3d 215 (2011), the Washington Supreme Court held that the Washington Court of Appeals had improperly affirmed the trial court's award of postsecondary educational support in accordance with Washington law when the initial child support order was issued in Nebraska and Nebraska law would not have allowed the award of such support under the circumstances. In *In re Schneider*, after the parties' divorce, the mother moved with the children to Washington, where she registered the Nebraska decree and a Washington court modified the duration of the child support obligation without the father's objection. Id., 356–57. The mother subsequently filed a motion to modify the order seeking postsecondary educational support for one of the children. Id., 357. The trial court granted the mother's motion and the father appealed, contending that the Washington court did not have the authority under the uniform act to extend his child support obligation beyond the age of majority in Nebraska, which is nineteen years. Id. The Washington Court of Appeals affirmed the trial court's decision, concluding that the uniform act "did not apply to the award of postsecondary educational support because the trial court modified its own . . . order, not the Nebraska order" and Washington law permits the award of postsecondary educational support. Id., 357–58, 364. The Washington Supreme Court reversed the judgment of the Court of Appeals, relying in part on the language of Washington's equivalent to § 46b-213q (d) and the official comments to the uniform act corresponding to that section. Id., 364–65. The court reasoned as follows: "It may seem anomalous to deny postsecondary educational support for [the child], who has lived in Washington for several years and attends a Washington state university. But there are two sides to this result. A child who is initially allowed the potential of postsecondary educational support in Washington will be able to receive that support even after moving to another state. Every state has adopted the [the uniform act] in some form and [the uniform act] provides that the originating state's law applies to the duration of child support." Id., 370.

Similarly, the New Hampshire Supreme Court in *In re Scott*, 160 N.H. 354, 360–62, 999 A.2d 229 (2010), held that the law of the first state to issue a child support order, Massachusetts, governed the duration of the father's child support obligation, despite the fact that

a New Hampshire court had subsequently modified the Massachusetts orders by increasing the amount of child support. Although New Hampshire had not adopted the 2001 amendments to the uniform act, the court noted that the official comments to the equivalent of § 46b-213q (d) in the uniform act "provide[d] insight into the intended meaning of New Hampshire's existing statute." Id., 361. Furthermore, in *In re Martinez*, 450 S.W.3d 157, 164 (Tex. App. 2014), the Court of Appeals of Texas, relying in part on a statute analogous to § 46b-213q (d), held that the trial court could not modify the duration of an expired New York support decree "to impose a further support obligation upon [the obligor] or create a new obligation based on [the child's] disability" because the duration of the child support obligation was governed by New York law, "which the parties [had] stipulated does not provide for support of adult disabled children."

Our examination of the plain language of the statute and related statutes indicates that § 46b-213q (d) vests the first state to issue a child support order with control over the duration of the child support obligation, notwithstanding any subsequent modifications of the child support order by a tribunal of another state. Furthermore, our review of the case law of other states that have enacted or considered analogous statutes also supports this understanding. Accordingly, because it is undisputed that the Florida judgment was rendered before any of the Connecticut orders, the initial controlling order in the present case is the Florida judgment and, therefore, Florida law governs the duration of the defendant's child support obligation. Furthermore, the parties in the present case do not dispute that Florida law provides for support for adult disabled children.[10]

The defendant, however, claims that § 46b-213q (d) does not apply to the present case. Specifically, the defendant contends that this statute applies to the modification of a child support order of another state and that the trial court's order extending indefinitely the duration of the defendant's child support obligation modified the 2010 support order that was issued by a Connecticut court, not the Florida judgment.[11] We disagree with the defendant.

We presume that the defendant's claim pertains to the title of § 46b-213q, which reads "Modification of child support order of another state." It is well established that "[a]lthough the title of a statute or regulation and its placement within a group of statutes or regulations may provide some evidence of its meaning . . . such considerations cannot trump an interpretation that is based on an analysis of the statutory or regulatory language and purpose." (Citation omitted.) *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 75, 52 A.3d 636 (2012); see General Statutes, preface, pp. vi–vii ("A boldface

catchline follows the section number of each section of the General Statutes. These catchlines are prepared, and from time to time changed, by the Revisors [of the General Statutes] and are intended to be informal descriptions of the contents of the sections. . . . These boldface catchlines should not be read or considered as statements of legislative intent since their sole purpose is to provide users with a brief description of the contents of the sections."); see also *Clark* v. *Commissioner of Correction*, 281 Conn. 380, 389 n.14, 917 A.2d 1 (2007).

The defendant's interpretation is contrary to the plain language of § 46b-213q (d). There is no language in § 46b-213q providing that once a Connecticut court modifies an out-of-state child support order and thereby assumes "continuing exclusive jurisdiction" over the child support order pursuant to § 46b-213q (e), the language in § 46b-213q (d) becomes inapplicable. The plain language of § 46b-213q expressly imposes restrictions on which elements of a child support order originally issued in another state may be modified. The official comments to the 2001 amendments to the uniform act, as quoted in *In re Scott*, confirm that the modification of an out-of-state child support order by a Connecticut court does not confer upon the courts of this state the unrestricted authority to apply Connecticut substantive law in all respects in a subsequent modification proceeding. See *In re Scott*, supra, 160 N.H. 361 (noting that "although the initial child support order 'may be modified and replaced by a new controlling order . . . the *duration* of the child-support obligation remains constant, even though virtually every other aspect of the original order may be changed' " [emphasis in original]). Therefore, despite the fact that Connecticut acquired "continuing exclusive jurisdiction" over the child support order as a result of its previous modifications of the amount of the defendant's child support obligation, the language of § 46b-213q (d) expressly prohibits the application of Connecticut law in determining the duration of the defendant's child support obligation in the present case.

The defendant further contends that even if § 46b-213q (d) applies, Connecticut, rather than Florida, issued the "initial controlling order" when a Connecticut court first modified the Florida judgment in 2003. We are not persuaded.

We are mindful that "[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Tilcon Connecticut, Inc.* v. *Commissioner of Environmental Protection*, 317 Conn. 628, 663, 119 A.3d 1158 (2015). As previously noted in this

opinion, neither party disputes that the Florida judgment controlled the defendant's child support obligation before a Connecticut court modified the Florida judgment. The defendant's reading of § 46b-213q (d) would render the term "initial" in that statute meaningless. In addition, we note that the Washington Supreme Court in *In re Schneider* rejected a similar claim, reasoning as follows: "The trial court held that it had jurisdiction to modify its own 2007 child support order. The Court of Appeals affirmed, holding that because the trial court was modifying its own order and not the Nebraska child support order, [the uniform act] did not apply. . . . This conclusion is contrary to the plain language of [Washington's equivalent to § 46b-213q (d)], which refers to the 'initial controlling order.' In this case, the Nebraska child support order was clearly the *initial controlling order* because it was modified by the 2007 Washington order. Child support orders are frequently modified as children grow older or when circumstances change. . . . If the [uniform act] ceased to apply after the first modification, the reference to the state that issued the *initial controlling order* would be superfluous." (Citations omitted; emphasis in original.) *In re Schneider*, supra, 173 Wn. 2d 364. Therefore, we reject the defendant's proposed construction of § 46b-213q (d).

Furthermore, the interpretation of the statutory scheme that the defendant advances would defeat one of the primary purposes underlying the uniform act, namely that of preventing forum shopping by the parties to a child support order. See id. (" 'Prior to 1993, American case law was thoroughly in chaos over modification of the duration of a child-support obligation when an obligor or obligee moved from one state to another state and the states had different ages for the duration of child support. The existing duration usually was ignored by the issuance of a new order applying local law, which elicited a variety of appellate court opinions. [In 1992, the uniform act] determined that a uniform rule should be proposed, to wit, duration of the child-support obligation would be fixed by the initial controlling order.' "); see also *Lunceford* v. *Lunceford*, supra, 204 S.W.3d 707 ("[v]esting control of the duration of child support in the first order is consistent with the policy of [the uniform act] to promulgate a single-order system for child support and avoid forum shopping by the parties under a child support order"). As the Washington Supreme Court explained in *In re Schneider*, to hold that the law of the responding tribunal controlled the duration of a child support obligation would subvert "the purpose of [the uniform act] to preclude forum shopping by either the obligee or the obligor: One would need only to move to a state with laws offering a more appealing duration of child support, have the order modified in some other way, then petition to modify the duration according to the laws

of the new forum state." *In re Schneider*, supra, 365–66.

Lastly, the defendant urges this court to consider the application of General Statutes (Rev. to 2013) § 46b-213j to the present case and advances two claims in support of his position that Connecticut law clearly applies to the present case under this statute. First, the defendant contends that because Connecticut modified the Florida judgment in 2003 and thereby issued the controlling order, Connecticut, rather than Florida became the "issuing state" within the meaning of § 46b-213j (a). Second, the defendant claims that even if Florida remained the "issuing state," § 46b-213j (d) required the trial court to apply Connecticut law to the present case because a Connecticut court previously consolidated arrears in child support payments. We disagree.

Insofar as §§ 46b-213j and 46b-213q are facially in tension, we are mindful of "the well established principle of statutory interpretation that requires courts to apply the more specific statute relating to a particular subject matter in favor of the more general statute that otherwise might apply in the absence of the specific statute. [I]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . The provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." (Internal quotation marks omitted.) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 301–302, 21 A.3d 759 (2011).

The text of the two statutes at issue and their respective locations within the act demonstrate that § 46b-213q more specifically applies to the child support issue in the present case. First, we recognize that a child support order of another state may be registered in Connecticut for enforcement purposes pursuant to General Statutes (Rev. to 2013) §§ 46b-213g through 46b-213h, for modification purposes pursuant to General Statutes (Rev. to 2013) § 46b-213o, or both. Unlike General Statutes (Rev. to 2013) § 46b-213j (a) (1), which generally provides that "the law of the issuing state governs . . . [t]he nature, extent, amount and *duration* of current payments under a registered support order"; (emphasis added); without specifying the types of proceedings in which the statute is applicable, General Statutes (Rev. to 2013) § 46b-213q (d) specifically applies to "a proceeding *to modify* a child support order . . . ." (Emphasis added.) Furthermore, we note that § 46b-213q directly follows General Statutes (Rev. to 2013) § 46b-213p, which is entitled "Effect of registration for modification" and provides in relevant part that "[a] family support magistrate may enforce a child

support order of another state registered for purposes of modification, in the same manner as if the order has been issued by a family support magistrate, *but the registered order may be modified only if the requirements of section 46b-213q . . . have been met.*" (Emphasis added.) Therefore, § 46b-213p makes clear that a court must consult the restrictions on modification in § 46b-213q before modifying the order. Section 46b-213j, on the other hand, directly follows General Statutes (Rev. to 2013) § 46b-213i, which is entitled "Effect of registration for enforcement." Second, we note that unlike the language of § 46b-213q (d), which specifically references the duration of a child support obligation, General Statutes (Rev. to 2013) § 46b-213j (d) provides in relevant part that "[a]fter a tribunal of this . . . state determines which is the controlling order and issues an order consolidating arrears, if any, *a tribunal of this state shall prospectively apply the law of the state issuing the controlling order, including its law on . . . current and future support . . . .*" (Emphasis added.) Therefore, § 46b-213j applies to enforcement proceedings and § 46b-213q applies to modification proceedings. Accordingly, in the absence of any clear legislative intent to the contrary, we conclude that § 46b-213q (d), the provision that is more specific with respect to modification of the duration of a child support obligation, should apply over § 46b-213j.

On the basis of our review of the plain language of § 46b-213q (d), other related statutes, and their direction to interpret them uniformly with other states, § 46b-213q (d) applies to a modification of the duration of the child support obligation in the present case. Accordingly, we conclude that because Florida was the first state to enter a child support order in the present case, the trial court properly concluded that Florida law governed the duration of the defendant's child support obligation.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] We note that, although the defendant was also obligated to pay child support for their eldest child, the present appeal involves the defendant's support obligation solely for the benefit of their youngest child. For the sake of simplicity, we refer to the younger of the parties' two children as the child throughout this opinion.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The defendant no longer resides in Connecticut.

[4] In 2007, the parties agreed to a second modification of the amount of alimony and child support and stipulated to an arrearage in support payments. In 2008, the amount of the defendant's child support obligation was again modified.

[5] General Statutes § 46b-71 (b) provides in relevant part that "in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state *the substantive law of the foreign jurisdiction shall be controlling.*" (Emphasis added.)

[6] General Statutes § 46b-84 (c) provides in relevant part: "The court may make appropriate orders of support of any child with intellectual disability . . . or a mental disability or physical disability . . . who resides with a

parent and is principally dependent upon such parent for maintenance *until such child attains the age of twenty-one. . . .*" (Emphasis added.)

[7] We note that the legislature made changes to the act in 2015. See Public Acts 2015, No. 15-71. Hereinafter, all references to the act, unless otherwise indicated, are to the version appearing in the 2013 revision of the General Statutes.

[8] The plaintiff contended in her initial appellate brief that the trial court properly determined that § 46b-71 (b) governed the present case. The plaintiff, however, abandoned this claim at oral argument before this court. Specifically, counsel for the plaintiff stated: "I agree with counsel [for the defendant] that [the act] applies." Therefore, we do not address the applicability of § 46b-71 to the facts of the present case. The plaintiff also contended in her initial appellate brief that the defendant's claim is nonjusticiable because the defendant did not register the Florida judgment in accordance with the act. For the same reasons, we conclude that the plaintiff abandoned this claim at oral argument before this court. As a result, following oral argument, this court ordered the parties to file supplemental briefs addressing the issue of whether the trial court's judgment may be affirmed on the alternative ground of General Statutes (Rev. to 2013) §§ 46b-213j and 46b-213q (d) in the event that § 46b-71 was found not to apply to this case.

[9] In 2001, the uniform act was amended to include the language that is contained within § 46b-213q (d). See Public Acts 2007, No. 07-247; Uniform Interstate Family Support Act of 2001, § 611, 9 U.L.A. (Pt. IB) 255 (2005).

[10] Under Florida law, child support obligations generally terminate when the child reaches the age of eighteen. See Fla. Stat. Ann. § 61.14 (9) (West 2012). A court may, however, order support beyond age eighteen for a dependent person "when such dependency is because of a mental or physical incapacity which began prior to such person reaching majority . . . ." Fla. Stat. Ann. § 743.07 (2) (West 2010).

[11] The defendant also makes a number of other nonmeritorious contentions that we reject. First, the defendant contends that the trial court improperly modified the child support order without first finding "a substantial change in the circumstances" as required by General Statutes § 46b-86 (a). We reject this claim, however, because we conclude that Florida law governs the duration of the defendant's child support obligation and Florida law does not require a court to find "a substantial change in the circumstances" before extending the duration of a child support order on the basis of a child's disability. See *Taylor* v. *Bonsall*, 875 So. 2d 705, 707, 709 (Fla. App. 2004) (noting that, but for parties' stipulation, trial court "would have had jurisdiction to extend" support beyond child's eighteenth birthday, pursuant to Florida law, without indicating there had been material change in circumstances).

Second, the defendant contends that the 2010 support order terminated by operation of its own terms upon the child's graduation from high school in June, 2013. The record indicates that the plaintiff's motion to modify the 2010 support order was filed in April, 2013, and that the child graduated from high school in June, 2013. Accordingly, because it is undisputed that the plaintiff's motion to modify was filed prior to the terminating event, namely, the child's graduation from high school, we find no merit in the defendant's contention.

Third, the defendant cites to General Statutes (Rev. to 2013) § 46b-212c (b) in support of his position. We decline to address this claim, however, because the defendant misquotes § 46b-212c (b) as directly applying to modification proceedings when, in fact, the statute provides in relevant part that "[s]ections 46b-212 to 46b-213w, inclusive, do not: (1) [p]rovide the exclusive method of *establishing or enforcing* a support order under the laws of this state . . . ." (Emphasis added.)

Fourth, the defendant contends that the plain language of § 46b-213q (f) (2) indicates that once a Connecticut court assumes "continuing exclusive jurisdiction" over a child support order pursuant to the uniform act, Connecticut law controls all aspects of a subsequent modification proceeding, including the duration of the child support obligation. General Statutes (Rev. to 2013) § 46b-213q (f) (2) provides in relevant part that a court of this state "shall apply the provisions of sections 46b-212a to 46b-212*l*, inclusive, *and 46b-213g to 46b-213r, inclusive*, and the procedural and substantive law of this state to the proceeding for enforcement or modification. . . ." (Emphasis added.) Because § 46b-213q (d) is within the range of applicable statutes specified in § 46b-213q (f) (2), we find this claim to be without merit.

Fifth, the defendant cites to *State, Child Support Enforcement Division* v. *Bromley*, 987 P.2d 183 (Alaska 1999), *Groseth* v. *Groseth*, 257 Neb. 525,

527, 600 N.W.2d 159 (1999), and *In re Cooney*, 150 Or. App. 323, 326, 946 P.2d 305 (1997), in support of his claim. We do not find these cases to be relevant authority because these cases involved the application of the forum state's law to the modification of the *amount* of a child support obligation rather than the *duration* of the child support obligation.

Sixth, although the defendant contended at oral argument before this court that a postmajority award under Florida law requires an adjudication that the child is disabled or incapacitated and that there was no such adjudication in the present case, he did not provide any authority in support of this claim or make this claim in his appellate briefs. "It is well settled that claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing court." *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). Accordingly, we decline to consider this claim.

Finally, to the extent that the defendant claims that the application of Florida law to determine the duration of the defendant's child support obligation would run afoul of 28 U.S.C. § 1738B, also known as the federal Full Faith and Credit for Child Support Orders Act, the argument is made in a mere four sentences of his appellate brief and is unaccompanied by any supporting analysis. We consider this claim inadequately briefed and therefore decline to address it. See *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012) ("Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. Claims are also inadequately briefed when they . . . consist of 'conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . .'" [Citation omitted.]).

───────────────────────────