Filed 4/21/22  Proulx v. Neal CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| STEPHEN PROULX,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDREA NEAL,<br><br>    Defendant and Appellant. | 2d Civil No. B309328<br>(Super. Ct. No. 17FL01788)<br>(Santa Barbara County) |

Appellant Andrea Neal and respondent Stephen Proulx[1] divorced in 2018.  Their judgment of dissolution provided for joint physical and legal custody of their son.  A dispute arose over where they would enroll him in kindergarten for the 2020-2021 academic year.  Proulx requested an order from the trial court selecting a school near his house in Goleta; Neal requested a school near her house in Ojai.  Both presented modified custody schedules attempting to split custodial time fairly.  The dispute

_____

[1] Respondent's surname is pronounced "Prew."

culminated in a four-day evidentiary hearing, after which the court selected the Goleta school and adopted Proulx's proposed custody schedule. Neal appeals the decision's new custody schedule as well as a subsequent order denying her requests for attorney's fees and increased child support.

We affirm the judgment in full.

FACTUAL AND PROCEDURAL BACKGROUND

Proulx and Neal married in 2014. They divorced in 2018 and agreed to split legal and physical custody of their young son, R.P. Neal moved from the family home in Goleta to Ojai where she owned a home with her father. R.P. attended preschool in Goleta while staying with his father and one in Ojai while with his mother. Their stipulated "3-4-4-3" custody schedule[2] ensured he spent an approximately equal amount of time with both parents. The hour-plus commute, however, required him to spend considerable time in transit between the two households.[3]

When R.P. turned five, Proulx sought to enroll him in kindergarten at Foothill Elementary School in Goleta for the 2020-2021 academic year. Neal preferred Oak Grove School near her home in Ojai. They soon reached an impasse. Proulx filed a request for order (RFO) selecting Foothill Elementary and modifying their custody schedule to facilitate their son's transition from part-time enrollment at two schools to full-time at one. He proposed R.P. stay with him during the school week but stay nights with Neal every Monday through Wednesday;

_____

[2] A 3-4-4-3 or 4-3-3-4 schedule is a common custody arrangement in which the child alternates spending three days of the week with one parent and four with the other.

[3] Ojai is about 42 miles southeast of Goleta. The commute varies between one and two hours depending on traffic.

2

then with Neal on the first, second, and fourth weekends of the month.  Proulx later modified his proposal by switching Neal's overnight to Thursday so it would dovetail into her weekend custody time.

Neal opposed the RFO.  She believed Proulx's schedule would increase the time R.P. spent on the road and compromise his ability to participate in soccer, ju-jitsu, and other activities he enjoyed in Ojai.  She proposed R.P. attend Oak Grove School and live with her during the week, then stay with his father every second, fourth, and fifth weekend.  The court held a four-day evidentiary hearing on Proulx's RFO in June 2020 (the selection hearing).  It issued a proposed statement of decision selecting Foothill Elementary and adopting Proulx's custody schedule.  Neal objected to the decision as giving her less than a 50 percent time share.  She said the new schedule would "freeze her out" of R.P.'s education and assign her a larger share of driving duties.  The court confirmed its statement of decision without revisions on August 11, 2020.

Neal filed her own RFO five weeks later.  The court's selection of Foothill Elementary, she explained, prompted her to rent a house nearer to Proulx so they would not need to spend several hours each week shuttling R.P. between Ojai and Goleta.  This justified modifying the recently-issued custody schedule again, this time to a "2-2-3" arrangement with all exchanges taking place at school.  The RFO also sought $35,000 in attorney's fees Neal incurred over the previous months, together with an increase in child support based on the worsening of her financial condition since the 2018 judgment of dissolution.  She reported a sharp drop in her consulting income following the COVID-19 outbreak and found it difficult to find work locally in her highly specialized fields of training.  This contrasted with

3

Proulx, a university professor who obtained tenure not long after their divorce and earned a six-figure salary.

In response, Proulx said Neal's return to the Santa Barbara area was a pretext for unwinding the recently issued custody schedule. He stated Neal told him she "didn't really care about the money" and offered to refrain from requesting attorney's fees and more child support if he agreed to modify the schedule voluntarily. Proulx described her tactics as "civil extortion." He questioned why she did not mention these troubles while testifying at the selection hearing in June. Neal's decision to eschew lucrative consulting opportunities to spend more time with R.P., he argued, was really to blame for her problems if they existed at all.

Neal struggled to find a job in the Santa Barbara area despite her best efforts. This derailed her plan to relocate. She withdrew her request to modify the custody schedule but continued to seek attorney's fees and increased child support. Neal denied "extorting" Proulx and asked the court to sanction him for disclosing confidential settlement communications in his opposing papers. She also denied misleading the court at the selection hearing. She insisted her finances were not relevant to whether R.P. should attend school in Ojai or Goleta.

The trial court denied Neal's RFO. It found she waived her right to seek attorney's fees and additional child support by not requesting them at the selection hearing. The requests were also barred under the theories of equitable estoppel, judicial estoppel, and laches. Permitting Neal to "portray[] a completely different financial picture" than she did at the selection hearing, the court found, would "would pervert the judicial machinery." The court agreed her conduct amount to "civil extortion" and viewed her withdrawal of the custody issue with suspicion. Neal appeals.

DISCUSSION

We consider Neal's appeal in four parts: the trial court's modified custody schedule first; its denial of need-based attorney's fees second; its denial of sanctions-based fees third; and its denial of increased child support fourth. The court's selection of Foothill Elementary is not at issue.

*A. Modified Custody Schedule*

Neal contends the trial court abused its discretion by adopting a custody schedule giving her significantly less than 50 percent custodial time with R.P. and creating week-plus periods in which she sees him for only a short time. The need to modify the schedule to accommodate his full-time enrollment at Foothill Elementary, she states, did not permit the court to deviate so sharply from the "50/50" custody arrangement in their stipulated judgment of dissolution. Neal argues the modified schedule is tantamount to a "move away" order. She argues the court exceeded the scope of its authority and failed to provide her with frequent and continuing contact with R.P.

A trial court may modify an existing custody order "only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest. [Citation.]" (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956.) The standard of review is abuse of discretion. (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 731.) "'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) "'[E]rror must be affirmatively shown.'" (*Id.* at p. 564.)

No error occurred. We decline to equate the appealed decision to a "move away" order in the vein of *In re Marriage of*

5

*Burgess* (1996) 13 Cal.4th 25 and its successor *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072. *Burgess* elucidated the standard for determining whether a parent's proposed relocation will prejudice a minor child's "rights or welfare" pursuant to Family Code section 7501. (*Burgess*, at p. 32.)[4] *LaMusga* refined *Burgess* by clarifying how a non-custodial parent who opposes relocation must establish "detriment" to the child to trigger reevaluation of custody. These authorities are inapposite. Neal and Proulx did not propose relocating their primary residences during the school selection proceedings nor did such a move occur.[5] Proulx was not required to show R.P. would suffer detriment if custody were not modified.

Neal states her 47 percent share of custody time is closer to 42 percent in practice. She reaches this percentage by omitting so-called "phantom" time on mornings when her custody period begins at the same time R.P. starts school. This implies such time is valueless. It is not. On such days she will have the opportunity to volunteer in his classroom or participate unfettered in school functions.[6] She will realize these benefits regardless of whether the school day begins or ends with a custody exchange with Proulx. The trial court was certainly not required to discount such time in its calculus. Allocating three

---

[4] The Legislature expressly affirmed *Burgess* when it amended section 7501 in 2004.

[5] In addition, *LaMusga* and *Burgess* reviewed move away orders sought by the children's primary physical custodian. Neal and Proulx hold joint physical custody.

[6] Their stipulated judgment allows the non-custodial parent to attend school functions and other activities but they may not "unreasonably interfere with the custodial parent's time."

out of five school days to Neal, in fact, appears to address her concern that R.P.'s attending school in Goleta would "freeze her out" of his education.

Neal correctly observes Proulx's RFO sought to preserve a 50/50 physical custody schedule regardless of which school R.P. attended the next fall. This did not confine the court to ordering an arithmetically perfect split. Both parties acknowledged they would need to deviate from this ideal. Proulx's RFO proposed a time-and-date based, alternating-weekend schedule in place of the existing 3-4-4-3 arrangement. Neal's counter-proposal called for R.P. to live with her full-time during the academic year with the exception of the second, fourth, and fifth weekends. Neal conceded this would give Proulx a paltry 35 percent of custody time – an arrangement the trial court described as "a long way from 50/50." Having done so, she waived the right to challenge a 42 percent or 47 percent time share as beyond the court's scope of authority. (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1687 [party waives error based on action it affirmatively approved].)

The trial court's modified schedule also appears reasonable given the many other variables at play. It was also tasked with fairly allocating weekends, overnight stays, and driving duties; minimizing R.P.'s time spent in transit; accommodating Proulx's teaching schedule and administrative duties; and, as discussed above, ensuring each parent could participate actively in R.P.'s education. Both parents submitted detailed custody proposals at the close of evidence that attempted to fairly balance these variables. Proulx provided no alternative schedule if the court selected one of Neal's schools; Neal provided no alternative schedule if it selected Foothill Elementary. Substantial evidence

7

for both proposals existed.  The court did not exceed the bounds by choosing one over the other.

### B. Need-Based Attorney's Fees

The trial court invoked the equitable doctrines of judicial estoppel, waiver, equitable estoppel, and laches when it denied Neal's request for need-based attorney's fees.  We conclude the first of these applies and need not address the latter three.

The finding of judicial estoppel was based on conflicts between Neal's in-person testimony at the selection hearing and her subsequent RFO.  (See *People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 189 ["Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position"].)  "A trial court's determination on the issue of estoppel is a factual finding which will be upheld if supported by substantial evidence."  (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850, citing *County of Sonoma v. Rex* (1991) 231 Cal.App.3d 1289, 1296.)

Proulx's RFO, Neal's response, and the June 2020 hearing focused on R.P.'s educational transition and not on the parties' finances.  Neal nevertheless testified in enough detail about her job duties and compensation for the trial court to find subsequent statements about her financial hardship incompatible.  The court heard this testimony first-hand and was well positioned to evaluate her demeanor and credibility over the course of these proceedings.  (See *Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 143 [credibility of witnesses and weight of the evidence are matters for the trier of fact].)

### C. Sanctions-Based Attorney's Fees

Neal requested the court sanction Proulx for failing to respond to financial discovery, filing a late response to her RFO,

and for divulging settlement communications. The court denied the request.[7] We review its ruling for abuse of discretion. (*Moore v. Mercer* (2016) 4 Cal.App.5th 424, 444.)

Proulx countered Neal's RFO by alleging she, not he, had engaged in sanctionable behavior. His declaration described Neal twice threatening to seek fees if he did not agree to voluntarily modify the new custody schedule. He implies the first threat came from Neal herself shortly after the court issued its final statement of decision; the second came from a letter sent by Neal's attorney along with a proposed RFO. Neal disputed the accuracy of Proulx's account but did not deny she had contacted him before her attorney did. Rather, she insisted all correspondence on the subject fell within the settlement communication privilege. (Evid. Code, § 1152.)[8] The trial court found her attorney's letter was privileged but her direct statements to Proulx were not. It considered her threat to seek fees a form of "civil extortion" rather than a sincere effort to compromise.

---

[7] The request for sanctions contained in Neal's reply declaration did not specify the statute under which she sought them. The conduct she describes suggests Family Code section 271, subdivision (a).

[8] Evidence Code section 1152, subdivision (a) states: "Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or will sustain or claims that he or she has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his or her liability for the loss or damage or any part of it."

9

We note a degree of artistic license taken in Proulx's account.  Proulx did not inform the court the letter from Neal's attorney was marked "Confidential Settlement Communication."  In addition, he described receiving the letter "[b]efore the present RFO was filed" but did not provide its delivery date.[9]  The record shows Neal's counsel actually emailed it within *two days* of the court issuing its school selection decision.[10]  Glossing over this fact implied Neal made her initial threat long before her attorney expressly invoked the settlement privilege.  In this light, one might infer Proulx drafted his declaration in a manner that encourages the reader to conflate the statements made by Neal's attorney with those made by Neal herself.  But the trial court did not make this inference.  Instead, it resolved their conflicting accounts after considering the parties' declarations and exhibits.  It exercised its discretion properly when it found Proulx's account the more credible one.

### D. Child Support

The trial court found Neal's request for increased child support "barred by the same equitable concepts that bar her from collecting attorney fees."  Generally, a parent cannot by his or her conduct abridge the right of their child to receive guideline support.  Equitable defenses such as waiver, estoppel, and laches

---

[9] A communication may fall within section 1152 even in the absence of a preexisting dispute, so long as it is made in compromise of *potential* dispute. (See *Mangano v. Verity, Inc.* (2009) 179 Cal.App.4th 217, 222 ["We discern nothing in the language of Evidence Code section 1152 which limits it to offers to compromise preexisting disputes"].)

[10] The court served its final school selection decision on August 11, 2020.  Neal's counsel sent Proulx's counsel the proposed RFO by email on August 13, 2020.

do not apply to support determinations. (See, e.g., *County of Orange v. Smith* (2002), 96 Cal.App.4th 955, 963 [mother's 13-year delay in seeking support did not preclude support order against father under doctrine of laches].) The court's statement of decision, however, also found Neal failed to prove a change of circumstances warranting increased support. The evidentiary underpinnings of its ruling present a valid basis for us to affirm. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 ["""a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason"""].)

CONCLUSION

Judgment is affirmed. Respondent shall recover his costs on appeal.

NOT TO BE PUBLISHED.




PERREN, J.

We concur:



GILBERT, P. J.



TANGEMAN, J.

11

Thomas P. Anderle, Judge
Superior Court County of Santa Barbara

_____


Jarrette & Walmsley, Robert R. Walmsley and Marlea F. Jarrette, for Defendant and Appellant.

Beatriz Pimentel Flores for Plaintiff and Respondent.